J-S11005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONNIE MCLAURIN | : | |
| | : | |
| Appellant | : | No. 1105 EDA 2023 |

Appeal from the Judgment of Sentence Entered December 9, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007895-2018

BEFORE:   BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED SEPTEMBER 19, 2024**

Donnie McLaurin appeals from the aggregate judgment of sentence of eight to sixteen years of imprisonment after the trial court convicted him of rape by forcible compulsion, aggravated indecent assault without consent, incest, and sexual assault.  We affirm.

We glean the facts underlying Appellant's convictions from the trial transcript.  Appellant and Jasmine Johnson, who was aged twenty-four at the time of trial, are half-siblings, having the same mother but different fathers. As children, they only saw each other on special occasions when the extended family got together, but as young adults they began to spend more time together.  With Appellant living only a fifteen-minute walk away from where

_____

[*] Retired Senior Judge assigned to the Superior Court.

Ms. Johnson resided with their mother, he would come over to catch up with Ms. Johnson and talk about how they dealt with their mother not being part of their lives as children, often partaking in smoking marijuana and drinking alcohol while they did so.

One such occasion was August 16, 2018. Although Ms. Johnson had been abstaining from intoxicants because she was "going through a really bad break up" and wanted to "be sober-minded" to get her thoughts together, she made plans with Appellant to indulge that day. *See* N.T. Trial, 5/23/22, at 21. When Appellant arrived at her home in the afternoon, she gave him cash to procure marijuana and a bottle of brandy. Upon his return, they sat together in the bedroom of Ms. Johnson's sister Rajean,[1] doing shots of brandy and smoking joints. Ms. Johnson, with her atrophied tolerance to inebriants, began to feel dizzy and nauseated and "went in the bathroom to get [her]self together." *Id*. Unable to sit on the toilet, she laid on the ground and repeatedly vomited on herself and the floor. Appellant entered the bathroom and asked what she was doing, but Ms. Johnson was still so dizzy that she could not speak.

Appellant carried Ms. Johnson back to Rajean's room, removed her soiled dress, and put a pair of shorts on her. In the process, upon observing her body in only a tube bra, Appellant made a suggestive comment about how

---

[1] Rajean's surname was not provided.

he understood why Ms. Johnson's ex-boyfriend "kept coming back, going crazy over [her]." *Id*. at 33. Still feeling unwell, Ms. Johnson reclined on the bed next to a trash can. Ms. Johnson did not know whether she fell asleep or had a memory gap, but the next thing she recalled was feeling Appellant tug her shorts down and touch her genitals while her bra was down below her breasts. When she confirmed that she was conscious and not dreaming, she mustered the strength to smack his hand away. Barely able to move, she turned back towards the trash can. Appellant resumed rubbing her vaginal area before Ms. Johnson felt him insert his penis into her vagina and move "back and forth[,] back and forth." *Id*. at 28. After a short time, he received a phone call, stopped, and went over by the window to talk to the caller.

The next thing Ms. Johnson recalled, after possibly falling asleep again, was looking around, confused, and pulling her shorts and bra back up. Not knowing what she should do, she went to her bedroom and texted her friend Teraya Lyons about what happened. Ms. Lyons encouraged her to talk to someone with whom she was comfortable, prompting Ms. Johnson to call her cousin Olahshia Brown-Coles, who went with her to Temple Hospital to report the incident. Ms. Johnson gave a statement and a rape kit was conducted, which did not produce evidence of DNA from Appellant or any male. A blanket that the police subsequently obtained from the sister's bedroom contained semen from an unknown male.

Appellant faced the following charges that were held over for court: two counts each of rape, aggravated indecent assault, and indecent assault, as well as one count each of incest and sexual assault. He elected to be tried by the court rather than a jury. At trial, Ms. Johnson testified to the facts indicated above although, as we discuss *infra*, she was impeached with prior inconsistent statements as to some details. Ms. Lyons and Ms. Brown also testified in corroboration of Ms. Johnson's account of what happened after the incident. The Commonwealth further offered as witnesses Albani Harper, a sibling of both Appellant and Ms. Johnson, and Leea Woodlin, another cousin. Ms. Harper, who also lived in the same house as Ms. Johnson, was home during the time in question, had gone upstairs several times, including when Appellant was in the bathroom with Ms. Johnson, and took photographs of her and Appellant asleep on the bed approximately an hour later. Ms. Woodlin met Ms. Johnson and Ms. Brown at the hospital, provided Ms. Harper's photographs to the police officer and the Special Victims Unit ("SVU"), and provided a statement of her own.

Appellant testified in his defense. He indicated that he had spent the night at the house the day before the incident because Ms. Johnson's ex-boyfriend had been abusive and he intended to fight him if he showed up. Appellant stated that Ms. Johnson had "an attitude" that morning because their mother offered to make him breakfast but would not make Ms. Johnson any. *Id*. at 118. After Appellant took Ms. Johnson's money and went out for

marijuana and brandy, the two went upstairs to drink and smoke, with Ms. Harper joining them from time to time. He denied having gone into the bathroom with Ms. Johnson when she began vomiting, but rather said he went to the store to get her water and ice, and then hung out with Ms. Harper and their mother while Ms. Johnson slept. Appellant testified that he went back upstairs and fell asleep next to Ms. Johnson while talking on the phone with his child's mother. Later, they smoked some more. As Appellant was leaving, Ms. Johnson asked him if she could have a Bluetooth speaker that he had just purchased and he refused her. Ms. Johnson "got super mad and stormed up the steps." *Id*. at 120. The next day, Appellant was summoned to the SVU and gave a statement and a DNA sample. He denied having done anything and maintained that Ms. Johnson was "just being malicious." *Id*. at 121. He believed something did happen to Ms. Johnson, such as the ex-boyfriend abusing her, and she was blaming Appellant because he had not been there to help her.

At the conclusion of the evidence and arguments, the court announced its verdict. It explained that, although there were inconsistencies among the statements and testimony of Ms. Johnson about some of the details of the day's events, that was understandable given how intoxicated she had been. *Id*. at 150. The court determined that the core allegations were corroborated, and it saw no reason why she would "throw him under the bus because he wouldn't sell her some stereo" and fabricate the rape. *Id*. at 153. Concluding

that Ms. Johnson was not unconscious during the assault, the court found Appellant not guilty of the three counts requiring an unconscious victim, but found guilty of the remaining charges.

On December 9, 2022, the court sentenced Appellant as indicated above. He filed a timely post-sentence motion challenging the weight of the evidence, which was denied by operation of law. This timely appeal followed in which Appellant reasserted his weight claim as his only appellate issue. *See* Appellant's brief at 5. Initially, we determined that a remand was required because the trial court in its Pa.R.A.P. 1925(a) opinion addressed Appellant's challenge by citing and applying law pertinent to a claim that the evidence was insufficient to sustain a verdict, rather than the law specific to a weight claim. Consequently, we directed the court to author a supplemental opinion explaining whether the "verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (cleaned up).

The trial court has supplied a new opinion, and Appellant has submitted a corresponding supplemental brief, and the Commonwealth has informed this Court that it stands by its initial brief.[2] Therefore, this appeal is ripe for us to

_____

[2] Despite our proffering of the pertinent legal precepts, the trial court's supplemental opinion does not clearly apply the weight-of-the-evidence law by indicating that, upon reflection, its verdict did not shock the sense of

*(Footnote Continued Next Page)*

address Appellant's question: "Was the verdict of guilty rendered against the weight of the evidence?" Appellant's supplemental brief at 5.

We begin with a review of the applicable law. "[I]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Spence**, 290 A.3d 301, 311 (Pa.Super. 2023) (internal quotation marks omitted). The duties of the trial court and this Court in addressing weight claims are as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. . . . [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Arias**, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Thus, our task is to determine whether, in ruling on Appellant's weight challenge, the trial court "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on

_____

justice. **See Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000). However, the opinion does address the weight-based arguments that Appellant advocates, and he does not assert in his supplemental brief that the court abused its discretion by misapplying the law. Accordingly, we do not deem a second remand necessary.

partiality, prejudice, bias, or ill-will." ***Commonwealth v. Clay***, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up). "Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion." ***Arias***, 286 A.3d at 352 (cleaned up).

The trial court's supplemental opinion reiterates that it found the testimony of Ms. Johnson to be "very credible" and that the Commonwealth's evidence overall "significantly weighed against [Appellant.]" Trial Court Opinion, 5/29/24, at 5. Meanwhile, it concluded that Appellant's testimony was "specious and self-serving at best." ***Id***. The court observed that Ms. Johnson's intoxication at the time of the assault impaired her motor skills, yet it found that she remained "clearly lucid enough to recount this incident" in a manner that was "strong and convincing" and thus entitled to "great weight." ***Id***. at 7, 9.

Appellant complains that the trial court in its opinion did not focus upon the evidence contradicting Ms. Johnson's trial testimony or the objective, uncontradicted evidence weighing against his guilt. Regarding the latter, Appellant asserts that he showed no consciousness of guilt insofar as he willingly provided a statement and a DNA sample to police. ***See*** Appellant's brief at 10. Further, his DNA was not recovered from Ms. Johnson or her clothes while that of another male was recovered from a blanket on Rajean's bed. ***Id***.

As for Ms. Johnson's varying versions of events, Appellant highlights numerous discrepancies between her trial testimony and prior statements she made to police or others. For example, he cites differences as to whether she removed her soiled clothing or he did, whether she walked from the bathroom to Rajean's bedroom or Appellant carried her, whether they smoked again after she was ill, and whether Appellant was lying down or sitting next to her on the bed when he began touching her genitals. *Id*. at 9. Appellant insists that he is not asking us "to give more weight to his testimony or his witnesses," but instead "to give . . . Ms. Johnson's testimony and statements, statements made closer in time to the events, their proper weight in a reasonable manner." *Id*. at 9-10.

Appellant's arguments fail to convince us that the facts he emphasizes were "clearly of greater weight" such that the trial court abused its discretion in declining to find that justice had been denied. *Arias*, 286 A.3d at 352 (cleaned up). Rather, as the Commonwealth aptly observes, the factual discrepancies upon which Appellant bases his argument are largely tangential to the ultimate issues, while Ms. Johnson's recounting of the assaults themselves remained fairly consistent. *See* Commonwealth's brief at 9. Moreover, we perceive that many of the more glaring inconsistences were between Ms. Johnson's trial testimony about what happened and Ms. Woodlin's testimony about what Ms. Johnson told her four years prior to trial. It was within the province of the fact-finder to reconcile the divergent accounts

and decide whose recollection was weightier, and within the discretion of the trial court to conclude that the verdict was not impermissibly premised upon vague and uncertain evidence.  *See Spence*, 290 A.3d at 311.

The trial court's denial of Appellant's weight challenge thus does not appear to be manifestly unreasonable or the product of improper considerations, but instead is supported by the record.  Consequently, we hold that the court did not commit reversible error in declining to award Appellant a new trial based upon his weight challenge.  As no relief is due, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/19/2024