J-S30009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER STEVEN PENA | : | |
| | : | |
| Appellant | : | No. 9 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 17, 2023
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0002813-2021

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: NOVEMBER 4, 2024**

Peter Steven Pena appeals from the judgment of sentence entered on March 17, 2023, for his convictions of sexual assault, simple assault, false imprisonment, and intimidation of witness or victim.[1] Pena asserts the evidence for the sexual assault conviction was insufficient or against the weight of the evidence. We affirm.

The trial court aptly set forth the factual history:

### Testimony of Victim

On the evening of December 19, 2020, Jeshae Shepherd Anderson (hereinafter, "Victim") was at home with her and [Pena's] seven-month-old child. [Pena] and Victim had been in a relationship for about two to three years, and Victim was six weeks pregnant with their second child at the time of the incident. Two

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3124.1, 2701(a)(1), 2903(a), and 4952(a)(1), respectively.

days prior, on December 17, 2020, [Pena] had taken her automobile, which is registered in Victim's mother's name, and a police report was filed for a stolen car. On December 19, 2020, [Pena] arrived at Victim's apartment to return the car and they were relaxing for about an hour before the incident occurred.

While at the apartment, [Pena] began looking through Victim's phone. [Pena] became enraged by messages he viewed between Victim and her mother and Victim and another man. When [Pena] began yelling at Victim, she laughed at him, and [Pena] slapped Victim across the face. Victim ran to the bathroom, but [Pena] followed and locked himself in there with her. While in the bathroom, [Pena] put Victim in a headlock, and choked her with his hands while Victim cried out.

Shortly thereafter, [Pena] proceeded to open the bathroom door, and Victim went out to the hallway and cried over the incident that transpired. At this point, [Pena] dragged Victim into their daughter's bedroom, and stated that he wanted to have sex. When Victim told [Pena] "no" and "I don't want to" multiple times, [Pena] began to hit her on her back, stomach, and sides with a closed fist. Despite Victim's attempts to fight him back, [Pena] demanded [she] get on the floor on her hands and knees, ripped off her underwear, and performed sexual intercourse. Victim initially attempted to fight off [Pena] but gave up because she was scared for herself and child. After the encounter ended, [Pena] asked Victim if she was happy, and she demanded he leave the apartment. Approximately five minutes after the assault, Victim called her parents and then the police to report [Pena's] actions.

### Testimony of Matthew Kieselowsky

During the trial, the Commonwealth called the responding officer, Matthew Kieselowsky (hereinafter "Officer Kieselowsky") to testify to his knowledge of the events that transpired. On the evening of December 19, 202[0], Officer Kieselowsky was dispatched to Victim's home for a report of a physical and sexual assault. When he arrived on scene, Victim was present with her father, and relayed to Officer Kieselowsky that her car was stolen, and she was both physically and sexually assaulted. Victim expressed that she only wanted to file a PFA against [Pena] and not press charges. However, after calling his supervisor, the officer was advised to file charges against [Pena].

While still at Victim's apartment, Officer Kieselowsky found the ripped black underwear in Victim's daughter's bedroom and collected it as evidence. After submitting her written statement, Victim agreed to have the officer take her to Harrisburg Hospital to have a sexual assault kit performed and check on her unborn child.

### Testimony of Nicole Baselj

The jury also heard the testimony of Commonwealth's witness, nurse Nicole Baselj (hereinafter, "Baselj"). Baselj works at UPMC Pinnacle and specializes as a Forensic Nurse, commonly known as a SAFE or SANE nurse, meaning she deals with patients who have reported a crime, such as sexual abuse. On the night of the incident, Baselj was the SAFE nurse on duty, and was called to further evaluate Victim's sexual assault and physical assault. Victim consented to receive a SAFE examination. While there were no visual findings of strangulation, there was tenderness on both sides of Victim's neck. In addition, while Baselj indicated there was no visible bruising, she concluded that was not indicative of lack of assault. Rather, there are several reasons why one might not bruise, such as location and skin tone. The Commonwealth showed a series of photographs, one revealing a four-centimeter red scratch down Victim's back.

As for the sexual assault examination, Baselj testified that Victim reported nonconsensual vaginal intercourse. While Baselj reported there was no injury to the vaginal canal, such as tears, that is normal due to the female anatomy and is not indicative as to whether there was an assault. In fact, Baselj stated that even when there are tears and injury, it does not necessarily lead a SAFE nurse to believe there was a definitive assault.

### Testimony of Christopher M. Seiler

The final witness called by the Commonwealth was Detective Christopher M. Seiler (hereinafter "Detective Seiler") of the Swatara Township Police Department. Detective Seiler works in the Special Victim's Unit and deals primarily with child abuse, sexual assault, and other abuse. Detective Seiler testified that he had reached out to Victim to get a statement. However, on the day of their appointment, Victim did not show up, claiming she forgot. Additionally, Victim advised that she did not want to pursue

the sexual component of the incident, so Detective Seiler closed out the sexual component of the investigation.

After this conversation, Detective Seiler was contacted by District Attorney Adams, who advised that after a preliminary hearing, Victim was now interested in pursuing the sexual assault component of the investigation. The District Attorney asked Detective Seiler to interview Victim and re-evaluate the sexual assault component. When Detective Seiler briefly met with Victim on March 16, 2021, he asserts that she provided no additional information. Before the meeting, Victim provided a written statement and body cam[era] footage from the night of the incident, so no other statement was needed. Unfortunately, the body camera footage was unintentionally deleted, so Detective Seiler never viewed it.

While Detective Seiler was on the witness stand, the Commonwealth played phone calls that [Pena] made to the Victim while he was in the Dauphin County Prison. It was asserted that there were hundreds of calls placed by [Pena] to Victim. These phone calls established that [Pena] would constantly call Victim, often begging Victim to drop the charges and asking whether there was a rape kit performed.

Trial Court Opinion, 4/5/24, at 2-5 (record citations omitted).

Pena proceeded to a jury trial December 12, through December 13, 2022. On March 17, 2023, the trial court sentenced Pena to an aggregate sentence of 5-15 years' incarceration followed by 3 years' probation. Pena filed a timely appeal and complied with the trial court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Pena raises two claims for our review:

Whether the trial court erred in accepting the jury's verdict where the Commonwealth failed to present sufficient evidence [Pena] did engage in sexual intercourse without the complainant's consent[?]

Whether the trial court erred in accepting the jury's verdict which was contrary to the weight of the evidence presented which was not believed by the jury[?]

Appellant's Brief, at 4.

Before we address the merits of Pena's first claim, we must address the Commonwealth's contention that this claim is waived for Pena's failure to raise it in his Rule 1925(b) statement. **See** Appellee's Brief, at 7. It is axiomatic that "any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." **Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citation omitted). In his Rule 1925(b) statement, Pena argued:

The trial court abused its discretion, erred, and infringed upon Mr. Pena's constitutional rights including his right to Due Process of Law under the Constitution of the United States and under the Constitution of Pennsylvania by accepting the jury verdict where the Commonwealth failed to present sufficient evidence to prove the charge of Intimidation of a Victim/Witness, specifically the Commonwealth failed to introduce any evidence that the defendant intimidated the victim.

The trial court abused its discretion, erred, and infringed on Mr. [Pena's] constitutional rights including [his] right to Due Process of Law under the Constitution of Pennsylvania by accepting the jury verdict where the weight of the evidence established a consensual sexual act and not a sexual assault.

Rule 1925(b) Statement, 3/14/24, at 1-2 (unpaginated).

Pena's Rule 1925(b) statement clearly raises a sufficiency challenge, but only as to his conviction for intimidation of witness or victim. Pena did not raise a sufficiency challenge to his conviction for sexual assault. Pena asserted his conviction for sexual assault was against the weight of the evidence in his Rule 1925(b) statement, which is a distinct claim. **See Commonwealth v.**

***Arias***, 286 A.3d 341, 349 (Pa. Super. 2022) (noting the distinctions between weight and sufficiency of the evidence challenges). Pena's first claim is therefore waived for failure to raise it in his Rule 1925(b) statement.

Even if we were not to find the claim waived, Pena would not be entitled to relief. Pena asserts the evidence regarding sexual assault was insufficient because the jury must have disbelieved Victim as the jury acquitted him of rape. ***See*** Appellant's Brief, at 11-12. We disagree.

Our scope and standard of review regarding sufficiency challenges is well-established:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Johnson***, 180 A.3d 474, 478 (Pa. Super. 2018) (citation and brackets omitted).

Regarding inconsistent verdicts, we have consistently held:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rational for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. Moreover, it is well-settled that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence.

*Commonwealth v. Barkman*, 295 A.3d 721, 738 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted). We therefore review whether there was sufficient evidence for Pena's conviction for sexual assault, without consideration of the jury's acquittal of rape.

Sexual assault occurs when a defendant "engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S.A. § 3124.1. "[T]he uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Cramer*, 195 A.3d 594, 602 (Pa. Super. 2018) (citation omitted).

The testimony of Victim established Pena forced himself on her. Victim explained she was crying after Pena put her in a headlock. Pena decided he wanted to have sex, so he dragged Victim into their daughter's bedroom, and when Victim resisted, he punched her in the back, stomach, and sides to get her to comply. Pena then ripped off her underwear, later preserved by police as evidence, and penetrated her. The evidence was clearly sufficient for the jury to find Pena guilty of sexual assault. Therefore, even if not waived, Pena's first issue would not entitle him to relief.

Next, Pena claims the conviction for sexual assault is against the weight of the evidence because the jury must not have believed Victim as Pena was acquitted of rape. *See* Appellant's Brief, at 14-15.

Our scope and standard of review is well-established:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interests of justice.

*Commonwealth v. Dewald*, 317 A.3d 1020, 1037 (Pa. Super. 2024) (citation omitted).[2]

---

[2] We note Pena does not argue the trial court abused its discretion in denying his weight of the evidence claim. *See* Appellant's Brief, at 12-15. Pena is arguing to this Court the verdict is against the weight of the evidence. *See id.* This is the incorrect standard of review, and we remind counsel that a weight of the evidence claim is presented to the sound discretion of the trial court, and we only review a weight claim for an abuse of that discretion.

The trial court aptly found the verdict was not against the weight of the evidence:

> In the instant matter, the jury was required to weigh the testimony of the Victim, Officer Kieselowsky, Baselj, and Detective Seiler, all which strongly inferred that [Pena] sexually assaulted Victim. The testimony of the Victim showed that [Pena] dragged Victim into their daughter's bedroom, demanded her onto her hands and knees, and despite the Victim telling [Pena] "no" and "I don't want to" multiple times, [Pena] proceeded with the assault. Moreover, during Baselj's SAFE exam, she indicated that there were observable physical injuries, such as tenderness to the neck due to strangulation and being punched in the face, as well as a 4-centimeter scratch down her back.
>
> The jury, in finding [Pena] guilty of Sexual Assault, evidently found the objective testimony of the Commonwealth's witnesses to be credible. This Court has no reason to doubt the jury's credibility determination. Therefore, this Court certainly did not lose its breath or almost fall from the bench when the jury found [Pena] guilty of Sexual Assault, nor was it remotely shocking to the judicial conscience. Consequently, [Pena's] weight of the evidence claim must fail.

Trial Court Opinion, 4/5/24, at 8-9.

Pena essentially asks us to reassess the credibility of Victim. "We are precluded from reweighing the evidence and substituting our judgment for that of the factfinder." *Interest of D.J.K.*, 303 A.3d 499, 507 (Pa. Super. 2023) (citation omitted). The trial court did not abuse its discretion in finding the verdict did not shock its conscience. The evidence established Pena engaged in sexual intercourse without Victim's consent. The minor discrepancies Pena now points out were for the jury to evaluate. *See Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) ("The weight of the evidence is exclusively for the finder of fact who is free to believe

all, part, or none of the evidence and to determine the credibility of the witnesses.") (citation omitted). Pena's final issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/04/2024