J-S35039-22

2022 PA Super 202

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ENDER RADAMES ARIAS :
:
Appellant : No. 543 MDA 2022

Appeal from the Judgment of Sentence Entered February 3, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0001049-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED NOVEMBER 30, 2022**

Appellant Ender Radames Arias appeals from the judgment of sentence entered by the Court of Common Pleas of Lackawanna County after Appellant was convicted of several violations of the Uniform Firearms Act (VUFA), receiving stolen property, and related charges. Appellant raises challenges to the trial court's denial of his suppression motion as well as the sufficiency and weight of the evidence supporting his convictions. We affirm.

On June 19, 2020, officers found Appellant in possession of marijuana and a firearm reported as stolen. Thereafter, Appellant was charged with persons not to possess a firearm, possession of a firearm without a license, receiving stolen property, disarming a law enforcement officer, resisting arrest, obstruction of justice, possession of marijuana, and possession of drug paraphernalia.

---

[*] Former Justice specially assigned to the Superior Court.

On September 16, 2020, Appellant filed an omnibus pretrial motion, which included a request to suppress evidence based on allegations that the police conducted a warrantless vehicle search not supported by probable cause. On October 27, 2020, the Honorable Michael Barrasse held a hearing on the pretrial motion at which the following factual history was developed.

On June 19, 2020, Scranton Police Officer Kyle Gilmartin was on patrol at the Valley View Housing Complex, an area that the police had been monitoring due to increased crime, including drug and firearm violations. Notes of Testimony (N.T.), Omnibus Motion Hearing, 10/27/20, at 3-4.

Officer Gilmartin observed an individual parked in a gold Mercedes sedan in an area where vehicles typically do not park, away from the houses and parking lots of the housing complex. *Id*. at 4-5. When Officer Gilmartin initially observed the vehicle, he ran the vehicle's license plate which he discovered belonged to a Honda sedan owned by a female from Jessup. *Id*. at 4-5.

After the vehicle did not move for forty-five minutes and the vehicle's occupant did not exit, Officer Gilmartin pulled his patrol car behind the vehicle without activating his emergency lights. *Id*. at 5. Officer Gilmartin approached the vehicle on foot and noticed an odor of marijuana emanating through the driver's side window that was partially open. *Id*. at 5-6.

Officer Gilmartin knocked on the driver's window, encountered Appellant sitting in the driver's seat, and asked a few questions. *Id*. at 5-6. Officer Gilmartin testified that Appellant did not appear to be paying attention to what was "going on around him." *Id*. When Officer Gilmartin asked Appellant how

long he had been sitting there, Appellant stated that he had been there for ten minutes. *Id*. After Officer Gilmartin told Appellant he had been watching him for forty-five minutes, Appellant disagreed. *Id*.

After Officer Gilmartin commented on the smell of marijuana coming from the car, Appellant admitted that the car smelled like marijuana, but denied smoking marijuana, stated that there was no marijuana in the car, and indicated that the vehicle was not his car. *Id*. at 6-7.

At that point, Officer Gilmartin asked Appellant to step out of the car, indicating that he did so due to the high crime area, the long time frame in which Appellant was sitting in the car without doing anything, the vehicle's position in an area where cars typically do not park, the fact that the car had a tag on it that it was not assigned by PennDOT, the odor of marijuana, and Appellant's behavior when Officer Gilmartin approached. *Id*. at 7.

Appellant did not comply with Officer Gilmartin's requests to exit the vehicle. Officer Gilmartin summoned the assistance of other officers, asked Appellant repeatedly to exit the vehicle, and informed him that he would be removed from the vehicle if he did not comply. *Id*. at 8. When Appellant still would not comply, Officer Gilmartin informed Appellant that the vehicle's window would be broken if Appellant continued to refuse to comply. *Id*.

After Appellant was ultimately removed from the vehicle, the officers discovered a loaded firearm with a round in the chamber under the driver's seat of vehicle as well as a small amount of marijuana. *Id*.

On April 6, 2021, Judge Barrasse denied Appellant's suppression motion. Due to court congestion, this case was transferred to the Honorable Margaret Bisignani Moyle, who scheduled Appellant's jury trial for November 15, 2021.

At trial, Officer Scott Bezeleski, one of the officers that arrived to assist Officer Gilmartin during the stop of Appellant's vehicle, testified for the prosecution. He recalled that before Appellant exited his vehicle, Officer Bezeleski observed Appellant repeatedly reaching underneath the driver's seat of the vehicle. N.T. Trial, 11/17/21, 35-36, 78-79. These movements made Officer Bezeleski concerned that Appellant was trying to retrieve a weapon or contraband from underneath the seat. *Id*. at 36. Once Appellant was removed from the vehicle, Officer Bezeleski observed the handle of a firearm directly under the driver's seat. *Id*. at 87-88.

Upon seizure of the firearm, the officers noted that the serial number on the firearm was PY124307. Further investigation by Officer Taylor Dunn revealed the firearm had been reported stolen from the Scranton residence of an individual named Charles Thorne. *Id*. at 7-12, 102. While Mr. Thorne was subpoenaed to testify at Appellant's trial, he did not appear. *Id*. at 12.

Britney Lenig, a member of the State Police Forensic Unit, offered expert testimony in the field of DNA profiling and compared Appellant's DNA with DNA found on the firearm, magazines, and cartridges. N.T. Trial, 11/16/21, at 204-208, 211-12. Ms. Lenig testified that DNA found on the firearm consisted of a mixture of three contributors and opined that it was 25 nonillion times more likely that the profile included Appellant and two unknown individuals

than three unknown individuals. *Id*. at 217-221. Ms. Lenig stated that nonillion is a number followed by 30 zeros. *Id*. at 220-21. As a point of reference, Ms. Lenig noted there are approximately 7.9 billion people on Earth, which is a number followed by 9 zeros. *Id*. at 221.

At the conclusion of the trial, the jury found Appellant guilty of possessing a firearm without a license, receiving stolen property, resisting arrest, and obstruction of justice. The jury found Appellant not guilty of disarming a police officer. The prosecution withdrew the charges of possession of marijuana and possession of drug paraphernalia. In a bifurcated portion of trial on November 18, 2021, the trial court found Appellant guilty of persons not to possess a firearm.

On February 3, 2022, the trial court sentenced Appellant to an aggregate term of five to fourteen years' imprisonment. On February 10, 2022, Appellant filed a post-sentence motion, which the trial court subsequently denied. This timely appeal followed.

Appellant raises the following issues for review:

A. Whether the trial court erred when it denied Appellant's motion to suppress evidence discover[ed] in his vehicle in violation [of] *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), which held that the smell of marijuana alone is insufficient to establish probable case in order to conduct a warrantless search of his vehicle?

B. Whether the Commonwealth proferred sufficient evidence to prove beyond a reasonable doubt that Appellant committed the offense of receiving stolen property, 18 Pa.C.S.A. § 3925?

C. Whether the Commonwealth proferred sufficient evidence to prove beyond a reasonable doubt that Appellant committed

the offense of possession of a firearm, prohibited, 18 Pa.C.S.A. § 6105(a)(1)?

D. Whether the Commonwealth proferred sufficient evidence to prove beyond a reasonable doubt that Appellant committed the offense of firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1)?

E. Whether the guilty verdict rendered on the offense of receiving stolen property, 18 Pa.C.S.A. § 3925, was against the weight of the evidence?

F. Whether the guilty verdict rendered on the offense of possession of a firearm, prohibited, 18 Pa.C.S.A. § 6105(a)(1), was against the weight of the evidence?

G. Whether the guilty verdict rendered on the offense of firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1), was against the weight of the evidence?

Appellant's Brief, at 6.

Appellant first claims the trial court erred in denying his suppression motion, alleging that the trial court improperly found that the smell of marijuana alone provided the requisite suspicion to search his vehicle.

In reviewing an appeal from the denial of a motion to suppress evidence, we are guided by the following standard of review:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

> *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1134 (2007) (citations omitted). "It is within the suppression court's

- 6 -

sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." ***Commonwealth v. Gallagher***, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. ***In re L.J.***, 622 Pa. 126, 79 A.3d 1073, 1087 (2013).

***Commonwealth v. Bumbarger***, 231 A.3d 10, 15, (Pa.Super. 2020).

Appellant limits his challenge to claim that the warrantless search of his vehicle was not supported by probable cause. Our review of this claim is guided by the following principles:

The Fourth Amendment to the United States Constitution protects the right of people in this country to be secure against "unreasonable searches and seizures." U.S. Const. amend. IV. Thus, pursuant to the protections of the Fourth Amendment, before a police officer may conduct a search, he must generally obtain a warrant that is supported by probable cause and authorizes the search. ***Schneckloth v. Bustamonte****, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

***Commonwealth v. Reid***, 811 A.2d 530, 544–45 (Pa. 2002) (some footnotes omitted).

However, there are exceptions to the warrant requirement. A warrantless search of a residence is permissible if officers have probable cause to believe evidence of crime will be found in the home and exigent circumstances exist to compel the search. ***Commonwealth v. Edgin***, 273 A.3d 573, 579–81 (Pa.Super. 2022) (citing ***Commonwealth v. Roland***, 637 A.2d 269, 270-271 (Pa. 1994)).

Further, our courts in Pennsylvania previously recognized the federal automobile exception, which permitted police to conduct a warrantless search or seizure of an automobile solely based on probable cause without any need

for a separate finding of exigent circumstances. At the time of the vehicle search in this case, the automobile exception was valid in Pennsylvania pursuant to **Commonwealth v. Gary**, 91 A.3d 102, 138 (Pa. 2014). Since then, our Supreme Court overruled **Gary** in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), concluding that Article I, Section 8 of the Pennsylvania Constitution provides greater protection and only permits warrantless vehicle searches upon a showing of probable cause *and* exigent circumstances.

However, while the Supreme Court in **Alexander** announced a new rule of criminal law, defendants are "not automatically entitled to the retroactive application of the **Alexander** decision." **Commonwealth v. Heidelberg**, 267 A.3d 492, 502 (Pa.Super. 2021) (citing **Commonwealth v. Grooms**, 247 A.3d 31, 37 n.8 (Pa.Super. 2021)). "To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below." **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa.Super. 2014) (*en banc*).

Our review of the record reveals that Appellant never raised the issue of exigent circumstances requirement or cited to the **Alexander** decision before the trial court or in his Rule 1925(b) statement. As such, as Appellant failed to preserve this argument for appeal, this particular subissue is waived and we need not apply **Alexander** to this case.

Instead, we must evaluate the trial court's conclusion that the officers had probable cause to justify the warrantless vehicle search. Under these

circumstances, "police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Barr***, 266 A.3d 25, 40 (Pa. 2021) (citations omitted).

Pursuant to the "plain smell" doctrine, Pennsylvania courts historically held that the smell of marijuana alone would provide officers probable cause to conduct a warrantless search. However, the Supreme Court recognized that the 2016 enactment of the Medical Marijuana Act ("MMA"),[1] which created a limited exception for legal possession and use of medical marijuana under certain circumstances, invalidated the "plain smell" doctrine as marijuana is no longer *per se* illegal in Pennsylvania. ***Barr***, 266 A.3d at 41.

Nevertheless, as the Controlled Substance, Drug, Device, and Cosmetic Act ("CSA")[2] deems marijuana to be a prohibited substance for individuals not qualified under the MMA, the Supreme Court found that the smell of marijuana can still be indicative of criminal activity. ***Barr***, 266 A.3d at 41. As a result, the Supreme Court concluded that "the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." ***Id***.

In this case, the trial court found that Officer Gilmartin did not rely solely on the odor of marijuana emanating from the vehicle in determining that

---

[1] 35 P.S. §§ 10231.101-10231.2110.
[2] 35 P.S. §§ 780.101-780.144.

probable cause existed to justify a vehicle search. Officer Gilmartin testified that he witnessed the vehicle parked for 45 minutes in a location where vehicles are not typically parked in a high crime area known for drug and weapons violations. Moreover, Officer Gilmartin's investigation revealed that the vehicle's license plate was registered to different vehicle owned by a someone else, a female. While Appellant characterizes this as a minor summary infraction, he fails to acknowledge that this is a more serious violation as being an attempt to conceal the true identification of the vehicle.

Officer Gilmartin approached the vehicle and smelled the odor of marijuana. Appellant, the vehicle's male occupant, was not paying attention to what was going on around him and stated he had only been in the car for ten minutes when the officer observed Appellant sitting in the vehicle for forty-five minutes. As Appellant denied smoking marijuana and claimed there was no marijuana in the vehicle, there was no evidence Appellant was permitted to use medical marijuana. When officers asked Appellant to exit the vehicle, Appellant repeatedly refused and had to be forcibly removed from the vehicle.

Viewing the totality of the circumstances, we agree with the trial court that the officers had probable cause to conduct the search given the peculiar location of the car where vehicles do not typically park, the time frame that the vehicle was idle in the high crime area, the fact that the vehicle had a license plate registered to another vehicle, the odor of marijuana, Appellant's dishonesty, and his combative behavior. As a result, we conclude the trial court did not err in denying Appellant's suppression motion.

In the remaining claims, Appellant challenges the sufficiency and weight of the evidence supporting his convictions for possessing a firearm without a license, persons not to possess firearms, and receiving stolen property.

As an initial matter, we note that Appellant does not offer any analysis in his appellate brief to support his challenges to his convictions for the charges of possessing a firearm without a license and persons not to possess a firearm. Instead, Appellant baldly asserts that the firearm should have been suppressed as fruit of the poisonous tree based on his allegation that they were seized during an unlawful warrantless search. However, as noted above, we concluded this claim was meritless and upheld the trial court's denial of Appellant's suppression motion.

Appellant's failure to develop these claims with argument, applicable authority, and pertinent analysis results in the waiver of his claims. *Commonwealth v. Antidormi*, 84 A.3d 736 (Pa.Super. 2014) ("[a]s Appellant has cited no legal authorities nor developed any meaningful analysis, we find this issue waived for lack of development").

However, Appellant did adequately develop his challenges to the sufficiency and weight of the evidence supporting his conviction for receiving stolen property ("RSP"). This Court has clarified the difference between sufficiency and weight claims:

> The distinction between a claim challenging the sufficiency of evidence and a claim challenging the weight of evidence is critical. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but claims that "notwithstanding

all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." A claim challenging the sufficiency of the evidence, however, asserts that there is insufficient evidence to support at least one material element of the crime for which Appellant has been convicted.

***Commonwealth v. Lyons***, 833 A.2d 245, 258 (Pa.Super. 2003) (citation omitted).

Our standard of review for a challenge to the sufficiency of the evidence is well-established:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa.Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno***, ***supra*** at 136.

***Commonwealth v. Juray***, 275 A.3d 1037 (Pa.Super. 2022) (quoting ***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa.Super. 2011)).

To sustain a RSP conviction, the prosecution must prove that the defendant "(1) intentionally acquir[ed] possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." ***Commonwealth v. Robinson***, 128 A.3d 261, 265 (Pa.Super. 2015) (*en banc*) (citing 18 Pa.C.S.A. § 3925(a)).

Appellant's challenge to the sufficiency of the evidence supporting his RSP conviction has two parts. First, Appellant claims the Commonwealth failed

to meet its burden to show the firearm found in his possession was stolen as the prosecution failed to present the owner of the gun as a witness to verify that the gun was his and that it was stolen. While Appellant admits that the prosecution presented the NCIC record which reported the firearm as stolen, Appellant asserts that the NCIC record was inadmissible hearsay.

While Appellant asks this Court to review his sufficiency challenge without consideration of the NCIC report, this Court has held that "[i]n evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa.Super. 2005) (quoting *Commonwealth v. Palmer*, 751 A.2d 223, 227 (Pa.Super. 2000).[3]

---

[3] We note that Appellant did not raise or develop a specific challenge to the admissibility of the NCIC report on appeal. As such, this particular issue is waived. *See Antidormi*, *supra*.

Even assuming this challenge was properly raised on appeal, Appellant would not be entitled to any relief. Appellant fails to recognize that this Court has held that NCIC records may be admissible under the business records exception to the hearsay rule. *See* 42 Pa.C.S.A. § 6108 (the Uniform Business Records as Evidence Act); Pa.R.E. 803(6); *Commonwealth v. Corradino*, 588 A.2d 936 (Pa.Super. 1991) (finding the trial court properly exercised its discretion in deeming NCIC printouts admissible under the business records exception when a state trooper "testified in detail concerning the identity of the printouts, when they were made, how they were obtained, and their mode of preparation").

Therefore, we reject Appellant's claim that the prosecution failed to show the firearm found in Appellant's possession was stolen as the jury was permitted to rely on the NCIC report which reported the firearm as stolen.

Second, Appellant argues there was insufficient evidence to show he had the requisite knowledge that the firearm was stolen. Appellant argues that his mere possession of the property was not sufficient evidence to show the knowledge element of the crime.

This Court has recognized that "[w]hile mere possession of stolen property is insufficient to establish such knowledge, guilty knowledge may be inferred from unexplained, or unsatisfactorily explained, possession of recently stolen goods." *Commonwealth v. Bowens*, 265 A.3d 730, 745–46 (Pa.Super. 2021) (*en banc*), *appeal denied*, 279 A.3d 508 (Pa. 2022).

Moreover, "guilty knowledge" may be proven through other circumstantial evidence.

> Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

*Commonwealth v. Gomez*, 224 A.3d 1095, 1099–1100 (Pa.Super. 2019).

In *Gomez*, the defendant refused to cooperate with officers' requests during a routine traffic stop such that the officers forcibly extracted the defendant and his passengers from the vehicle. *Id*. at 1097-98. During a

subsequent search, the police discovered drugs and two stolen firearms, one in the center console and one in a safe underneath the driver's seat. *Id*.

This Court upheld the defendant's RSP conviction despite the prosecution's failure to establish any of the circumstances of how and when the firearms were stolen. This Court found other circumstantial evidence would allow the jury to infer that the defendant believed the firearms were stolen, primarily in the consciousness of guilt demonstrated by his non-cooperation during the traffic stop. *Id*. at 1100. While Appellant alleged that his conduct could "be explained by other crimes he had committed," specifically being a felon in possession of a firearm, this Court found that "[t]he fact-finder need not choose between [a defendant's] several crimes to determine whether one or more would cause [his] obstinate behavior. Rather, based on his conduct, the fact-finder was free to infer that Appellant knew or believed that the firearms were probably stolen." *Id*.

Further, this Court in *Gomez* noted that the defendant's status as a previously convicted felon prohibited him from lawfully purchasing or possessing a firearm. Thus, as the defendant likely had to obtain the stolen firearms illicitly, there was adequate evidence for the jury to infer the defendant believed the firearms were probably stolen. *Id*. *See also Bowens*, (upholding RSP conviction based on circumstantial evidence showing the defendant knew the firearm was stolen including that fact that the defendant was a convicted felon that was "unable to obtain any firearm legally, and would

have to resort to illegitimate means and product streams to procure a firearm").

In the instant case, the prosecution presented the NCIC report which indicated that the firearm found in Appellant's possession was stolen in June 2018 from an individual named Charles Thorne. N.T., 11/17/21, at 10-11. While the underlying theft did not occur close to the time Appellant was found in possession of the stolen firearm in June 2020, other circumstantial evidence presented by the Commonwealth provided the jury with a sufficient basis to infer that Appellant knew or believed the firearm was stolen.

During the routine traffic stop, officers noticed that Appellant was reaching under the driver's seat where the firearm was eventually located. Appellant then presented substantial resistance to the officers in refusing to cooperate with their repeated requests that he exit the vehicle, which ultimately resulted in the officers forcibly removing Appellant from his vehicle. Based on this conduct, the jury could infer that Appellant had guilty knowledge that he was in possession of a stolen firearm.

While an argument could be made suggesting that Appellant was uncooperative with police as he was a felon not permitted to possess a firearm, we need not conclude that the jury was required to determine which of Appellant's numerous crimes was the cause of Appellant's guilty knowledge. **See Gomez**, **supra**.

In addition, as Appellant was a previously convicted felon who was not permitted to purchase or possess a firearm, he could not obtain a firearm

through legal means but would have to resort to illegal avenues to obtain a firearm. Further, the firearm's listing on the NCIC database as stolen would prevent the firearm from being sold in a legitimate transaction.

When viewing the totality of the circumstances, the prosecution presented sufficient evidence to allow the jury to infer that Appellant intentionally acquired possession of a stolen firearm, Appellant had guilty knowledge that the firearms were probably stolen, and that Appellant intended to permanently deprive its rightful owner of possession of the firearm. Accordingly, the trial court did not err in denying this sufficiency challenge.

Appellant also challenges the weight of the evidence supporting his RSP conviction. Our standard of review is well-established:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

> ***Commonwealth v. Mucci***, 143 A.3d 399, 410–11 (Pa.Super. 2016), (quoting ***Commonwealth v. Clay***, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013)). To successfully challenge the weight of the evidence, a defendant must prove the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Mucci***, 143 A.3d at 411 (quoting ***Commonwealth v. Sullivan,*** 820 A.2d 795, 806 (Pa.Super. 2003)).

***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017).

Appellant reiterates the same claims he raised in support of his sufficiency challenge to his RSP conviction. Although Appellant does not challenge the prosecution's expert testimony that his DNA was found on the firearm, Appellant asserts that the weight of the evidence supports the defense theory that Appellant's DNA was improperly transferred to the firearm by the arresting officers. Appellant claims that Officer Gilmartin had physical contact with Appellant in removing him from the vehicle and then Officer Gilmartin touched the firearm without any gloves on.

However, Officer Gilmartin testified that he used gloves when removing the firearm from the vehicle and in pulling the chamber back so that he did not have direct contact with the firearm. N.T., 11/16/21, at 153, 160. While defense counsel noted that one of the officer's bodycams appeared to show that the glove on Officer Gilmartin's right hand was torn, Officer Gilmartin noted that the glove was ripped near his wrist but still covered his palm and fingers. ***Id***. at 156, 158.

In addition, the officers testified that Appellant had repeatedly tried to reach under the driver's seat where the firearm was located during the vehicle stop. ***Id***. at 78; N.T. Trial, 11/17/21, 35-36, 78-79. When officers discovered

the firearm in the vehicle, they noticed the handle of the loaded firearm was facing the front of the vehicle where it could be easily grabbed. This testimony corroborates the forensic analysis that suggests Appellant's DNA was transferred to the firearm when it was in his possession and control.

While the jury heard the defense's theory that Appellant's DNA was improperly transferred to the firearm by Officer Gilmartin, the jury was free to reject this theory and find the stolen firearm was in Appellant's possession and control. Although Appellant asks this Court to accept his version of the events, it was within the province of the jury to "believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Houser***, 18 A.3d 1128, 1135–36 (Pa. 2011). We will not disturb the trial court's discretion to uphold the jury's verdict which is supported by the record.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/2022

- 19 -