J-S18042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARILY IRIS WOODFORD-MCMAHON | : | |
| | : | |
| Appellant | : | No. 1238 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 7, 2023
In the Court of Common Pleas of McKean County
Criminal Division at No(s):  CP-42-CR-0000478-2022

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED:  November 14, 2024**

Marily Iris Woodford-McMahon ("Woodford-McMahon") appeals from the judgment of sentence imposed following her jury convictions for, *inter alia*, six counts of receiving stolen property, possession of a firearm with an altered manufacturer's number, and two counts of possession of an offensive weapon.[1]  We affirm.

The trial court set forth the factual history as follows:

> Ryan Bray testified that he stole the firearms and crossbows from his [parents'] home[,] and he took them to [Woodford-McMahon's] home and gave them to her son, [Paul McMahon ("Paul"),] in exchange for heroin.  He testified that he had numerous exchanges of stolen guns for drugs at [Woodford-McMahon's] home with [her] son, Paul[, the latest of which transactions occurred on July 26, 2022].  Paul . . . did not reside with [Woodford-McMahon,] and his residence was only two blocks away.  Paul . . . kept a "safe" at [Woodford-McMahon's] home, and[] "you can see it.  It's right in the living room."  The guns

---

[1] *See* 18 Pa.C.S.A. §§ 3925(a), 6110.2(a), 908(a).

were [stolen] on July 23, 2022. The guns and crossbows were [recovered] [after the last transaction between Ryan Bray and Paul at Woodford-McMahon's house] on July 27, 2022. They were located at [Woodford-McMahon's] residence in her bedroom. [Woodford-McMahon] was present when the multiple firearms and crossbows were located in her bedroom. [Twelve] firearms were located under [her] bed, and[] others in the bedroom closet. The bedroom was approximately [twenty] feet by [fifteen] feet. Some of the firearms were also under a child's blanket directly adjacent to [Woodford-McMahon's] bed. [Woodford-McMahon] admitted that the bedroom was her bedroom; and, that she sleeps in that room every night and is the only one who sleeps there. She admitted that she had slept in that bedroom the night before the search of it. [Woodford-McMahon] admitted that marijuana located in the room was hers. This marijuana was located within inches of the guns. [Woodford-McMahon] admitted to having "brief touch" with one of the stolen crossbows in her bedroom. [Thirty-three] firearms were located in the bedroom; and[ Woodford-McMahon] told the police that she [had] not see[n] any of them.

Dusty Clark [("Dusty"), Woodford-McMahon's] daughter, testified[, *inter alia,*] . . . that [Woodford-McMahon] had a history [of] "cater[ing] to Paul." . . . Paul . . . testified that he had "always" been "close" with his mom ([Woodford-McMahon]). He testified that he went to her home every day.[1]

[1][Paul] also testified that he hid many guns throughout [Woodford-McMahon's] bedroom, and[] he just happened to be moving them and put them by [her] bed right before the police arrived. . . ..

Trial Ct. Op., 12/19/23, at 4-5 (citations to the record omitted). The Commonwealth charged Woodford-McMahon with, *inter alia*, the *supra* offenses. She then proceeded to a jury trial, after which the jury convicted her of the offenses at issue here and acquitted her of related offenses not relevant to our disposition. The trial court sentenced Woodford-McMahon on

September 7, 2023, and she timely appealed on October 6, 2023.[2]  Both

Woodford-McMahon and the trial court complied with Pa.R.A.P. 1925.

Woodford-McMahon raises the following issues for our review:

1. Did the Commonwealth present sufficient evidence to establish all necessary elements of "[r]eceiving [s]tolen [p]property?

2. Did the Commonwealth present sufficient evidence to establish that [Woodford-McMahon] committed the offense of "[p]ossession of a [f]irearm with an [a]ltered [m]anufacturer's [n]umber"?

3. Did the Commonwealth present sufficient evidence to establish that [Woodford-McMahon] committed the offense of "[p]ossession of an [o]ffensive [w]eapon"?

Woodford-McMahon's Brief at 10.

Our standard of review for sufficiency of the evidence issues is as follows:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense.  Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.

_____

[2] The trial court entered an order on October 25, 2023, amending the sentence to correct a clerical error, to direct that the sentence for count eight is to run consecutively to count seven, not count one as stated at the sentencing hearing.  **Compare** N.T., 9/7/23, at 13 **with** Amended Order, 10/25/23.  This correction does not increase the aggregate sentence as originally stated.  The trial court originally stated its intention that the aggregate sentence of incarceration total thirty-nine to one hundred and eight months.  **See** N.T., 9/7/23, at 14.  This aggregate would only be reached if count eight were imposed consecutively to count seven.  Thus, the original sentence, insofar as it directed count eight run consecutively to count one instead of seven, was a clerical error.  **See Commonwealth v. Kremer**, 206 A.3d 543, 548 (Pa. Super. 2019) (trial court retains jurisdiction to correct clear clerical errors).

> The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Arias*, 286 A.3d 341, 349 (Pa. Super. 2022) (internal citations omitted). This Court has held that "in evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Arias*, 286 A.3d at 350 (internal citations, quotations, and brackets omitted).

In her first issue, Woodford-McMahon argues the evidence was insufficient to support her conviction for receiving stolen property. Receiving stolen property is defined as follows: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). "Receiving" means "acquiring possession, control or title, or lending on the security of the property." *Id*., § 3925(b). This Court has explained: "To sustain a [receiving stolen property] conviction, the prosecution must prove that the defendant (1) intentionally acquir[ed] possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive

permanently." ***Arias***, 286 A.3d at 350 (internal citations and quotations omitted; brackets in original).[3]

While mere possession of stolen property is insufficient to establish the requisite knowledge or belief the property was stolen, guilty knowledge may be inferred from unexplained, or unsatisfactorily explained, possession of recently stolen goods. ***See id***. Indeed:

> . . . "[G]uilty knowledge" may be proven through other circumstantial evidence.
>
> Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in

_____

[3] Regarding constructive possession, this Court has explained:

> Where possession is an element of the offense, the concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, or was otherwise able to govern its use or disposition as if in physical possession. Mere presence or proximity to the contraband is not enough. Constructive possession can be established by inferences derived from the totality of the circumstances.

***Commonwealth v. Bowens***, 265 A.3d 730, 741 (Pa. Super. 2021) (internal citation omitted). Indeed, prior physical possession is not a necessary prerequisite for constructive possession. ***See id***. False statements to police are evidence of consciousness of guilt. ***See id***. More than one person can constructively possess the same contraband. ***See Commonwealth v. Wright***, 255 A.3d 542, 554 (Pa. Super. 2021).

comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

*Id*. at 350–51 (internal citation and indentation omitted).

Woodford-McMahon argues the evidence was insufficient to sustain her convictions for receiving stolen property. She reasons that because there was no evidence she actually possessed the stolen firearms, the Commonwealth needed to prove constructive possession. *See* Woodford-McMahon's Brief at 17. She asserts the Commonwealth failed to prove constructive possession because Paul had full access to her home and garage, and was there "on a frequent basis." *Id*. at 18. She also maintains the evidence did not show that she knew of the existence and location of the stolen items. *See id*. She points out that the Commonwealth did not show she was present at the time Paul received firearms in exchange for drugs. *See id*. at 19. Woodford-McMahon further argues that Dusty's testimony did not establish Woodford-McMahon knew any specific guns were stolen, since some of the firearms in her home were legally owned. *See id*. at 20. She concludes the Commonwealth failed to prove she knew any specific firearms were stolen.

The trial court considered Woodford-McMahon's arguments and concluded they merit no relief:

> First, there is sufficient evidence to demonstrate that [Woodford-McMahon] took possession of the firearms and crossbows. They were in the most personal space of an individual, her private bedroom. Some were uncovered, some had a baby blanket on them and some under her bed – but they were everywhere. The jury was free to completely reject the assertion

that [Woodford-McMahon] didn't see the visible guns, or that she didn't wonder what was stacked up and had a baby blanket over it, feet from her bed, or that she didn't see the guns that were inches [from] her marijuana, or wonder what was under her bed[.] The circumstantial evidence established that both she and her son possessed the firearms and crossbows, her son because he obtained and put them there, and [Woodford-McMahon] because she catered to him and allowed him to store and stack them up in her private bedroom, so that they would be out of view from others[.]

Second, there is sufficient evidence in the record to demonstrate, beyond a reasonable doubt, that [Woodford-McMahon] knew that her son had stolen weapons and he wanted to conceal them, and that she allowed him to hide them in her bedroom. [Woodford-McMahon] and her son were very close and in contact daily. As defense counsel brought out on cross examination, [Woodford-McMahon] would "cater" to him. The evidence here supports the finding that that is exactly what she did here, she catered to him storing the stolen firearms and crossbows that he obtained in her bedroom. The jury was free to reject [Woodford-McMahon's] absurd assertion that she did not see the [thirty-three] firearms and crossbows throughout her [twenty] feet by [fifteen] feet bedroom, some under and stacked directly beside her bed. [Woodford-McMahon] chose to make statements to the officers and the absurdity of her assertions, that she slept over guns, slept beside guns and crossbows, had them stacked in the room and in a closet, could be considered by the jury in determining her guilty knowledge. . . . Also, although not needed to prove guilt beyond a reasonable doubt, the short time between the theft of the Brays' . . . firearms and crossbows and their recovery in [Woodford-McMahon's] bedroom is further circumstantial evidence of guilt. . ..

Finally, there is evidence that [Woodford-McMahon] intended to deprive the true owners of the firearms and crossbows. . . . When the police asked her about them being in her private bedroom, she didn't indicate that they were borrowed or her son[']s, but instead indicated that she hadn't seen anything . . .. Specifically, the jury was free to find that [Woodford-McMahon] was lying and that she [had seen] the weapons. The jury was free to find that [she] said she didn't see them because she knew they were, or likely were, stolen[,] and her son was

stashing them with her in her bedroom to conceal them and prevent their return to the Brays.

Trial Ct. Op., 12/19/23, at 6-7 (emphasis omitted).

Following our review, we likewise conclude Woodford-McMahon is due no relief. We begin by noting that she and the trial court have treated the stolen firearms collectively, and, accordingly, we do the same. The record reveals that a stolen 9 mm firearm was stored in a lockbox under Woodford-McMahon's bed along with twelve other firearms. **See** N.T., 8/14/23, at 51-52. Two stolen long rifles were under Woodford-McMahon's bed. **See id**. at 53.[4] Woodford-McMahon had in her closet three stolen crossbows "stacked up on some boxes," with nothing covering them. **See id**. at 71. Crucially, Woodford-McMahon's clothes were in the closet. **See id**. at 72. Woodford-McMahon also stored some of her marijuana in the closet. **See id**. at 72-73. Woodford-McMahon admitted that the bedroom was hers, as was the closet and the marijuana therein, and that she knew she had a lockbox under her bed. **See id**. at 99. Nevertheless, Woodford-McMahon, in response to questions from Trooper Hunter Freer ("Trooper Freer") denied knowing there were any firearms at all in her bedroom. Trooper Freer testified:

[S]he told me that she had no idea, that she had never observed any one of these firearms or crossbows within her bedroom[, w]here she told me she sleeps every night[;] and she told me she's the only one that sleeps there every night. So to me, I was inquisitive as to how someone could sleep in a bedroom

---

[4] Several other long rifles were leaning against a nightstand next to Woodford-McMahon's bed under a child's blanket. **See** N.T., 8/14/23, at 53.

with that many firearms and crossbows in it and not recognize a single one of them.

So, when I asked her about how she didn't see the guns next to her nightstand, where she told me she sleeps every night in that bed, she informed me that there was a blanket up over top of them, so how could she see them?

*Id*. at 99-100. Later, when confronted with the fact that her marijuana had been placed inches from the stolen crossbows she claimed she had no idea were there, she had no answer, but then admitted to touching one of the crossbows, but not moving it. *See id*. at 101-02. Additionally, we observe that Ryan Bray stole the firearms and crossbows from his family on July 23, 2022 and traded them to Paul for drugs on July 26, 2022, and Trooper Freer executed a search warrant the next day, at which time he discovered the stolen weapons. *See id*. at 20-21, 37, 43, 51.

We conclude the circumstantial evidence proved beyond a reasonable doubt that Woodford-McMahon constructively possessed the stolen weapons with the knowledge they were stolen and the intent to permanently deprive the owners of them based on the following: the location of the stolen property (*i.e.*, in Woodford-McMahon's bedroom under her bed, and in her closet, and amongst her personal possessions, including her clothes and marijuana); her implausible and shifting statements to police first disclaiming any knowledge of the weapons at all, and then her admission to "touching" one of them; and the close temporal proximity between the thefts and the police search,

pursuant to a warrant, discovering the property. **See Arias**, 286 A.3d at 350-51; **Bowens**, 265 A.3d at 741.[5]

In her second and third issues, Woodford-McMahon challenges the sufficiency of the evidence for her convictions for possession of a firearm with an altered manufacturer's number and possession of an offensive weapon. Before reaching the merits of Woodford-McMahon's issues, we must determine whether she has preserved them.

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013). Where a Rule 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal. **See Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008). **See also Commonwealth v. Arnold**, 284 A.3d 1262, 1279 (Pa. Super. 2022) (stating that a Rule 1925(b) statement must identify the elements upon which the evidence was insufficient).

_____

[5] Woodford-McMahon's reliance on **Commonwealth v. Parrish**, 191 A.3d 31, 37-38 (Pa. Super. 2018), is misplaced. There, we held the evidence was insufficient to support a finding of constructive possession of contraband where it was all located in a bag in the front passenger floor of a car and the defendant was in the back on the driver's side. **See id**. No evidence was adduced from which the jury could infer Parrish had knowledge of the contraband. Here, in contrast, the contraband was in Woodford-McMahon's bedroom distributed amongst her things, and she gave equivocal statements about knowing whether the weapons were there before admitting to touching one. **Contra** Woodford-McMahon's Brief at 18.

Our review of Woodford-McMahon's Rule 1925(b) statement reveals that she failed to specify, for her second and third issues, the elements of the offenses for which the evidence was allegedly insufficient. **See** Concise Statement of Errors Complained of on Appeal, 10/24/23, at ¶¶ 2-3. Accordingly, she has waived these issues for our review.[6]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  11/14/2024

_____

[6] The trial court concluded for the same reasons that Woodford-McMahon had waived her third issue. **See** Trial Ct. Op., 12/19/23, at 2. Additionally, the trial court did not address the possession element of the second issue but, ostensibly due to the vagueness of her concise statement, addressed instead the evidence that the firearm's manufacturer's number had been altered. **See** **id**. at 8.

We note that, even if preserved, Woodford-McMahon would be due no relief on her second and third issues. To the extent that she challenges in these issues merely the possession element of the offenses, **see** Woodford-McMahon's Brief at 22-23, as we concluded above, the circumstantial evidence, in the light most favorable to the Commonwealth as the verdict winner, demonstrates Woodford-McMahon constructively possessed the firearms.