J-S05014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN DELOSSANTOS | : | |
| | : | |
| Appellant | : | No. 886 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 25, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003431-2021

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 21, 2025**

Juan Delossantos appeals from the judgment of sentence of eleven and one-half to twenty-three months of incarceration, followed by seven years of probation, imposed upon his convictions for aggravated assault, simple assault, recklessly endangering another person, and disorderly conduct. We affirm.

We glean the following facts from the certified record. On the evening of January 18, 2021, Shelia Jackson was working as a SEPTA cashier at the 11th and Market Street station. Upon returning after a break to her booth on the westbound side of the platform, she saw Appellant leaning against the wall facing her on the eastbound side. Appellant proceeded to walk up to an

_____

[*] Former Justice specially assigned to the Superior Court.

unidentified woman ("Victim") and push her onto the train track. Ms. Jackson, who could hear a train approaching, ran to her booth to "hit the train-stop button." N.T. Trial, 5/2/23, at 17. Appellant then crossed over to the westbound side of the platform to exit the station. Ms. Jackson asked Appellant why he had done that, and he responded: "Fuck that white bitch." *Id*. at 18. The incident was reported to the police, who arrested Appellant five minutes later at another SEPTA station two blocks away.

Appellant was charged with the above-listed offenses.[1] His preliminary hearing, held during the COVID-19 pandemic, was conducted over Zoom video conferencing. Although Appellant refused to lower his face mask, Ms. Jackson identified him by his hair and eyes.

Ultimately, Appellant elected to proceeded to a bench trial at which the Commonwealth presented the testimony of Ms. Jackson and the SEPTA detective who interviewed her and obtained video from the eastbound platform depicting the incident, and proffered said video.[2] Pertinent to this appeal, Ms. Jackson, who is five feet tall, acknowledged on cross-examination

---

[1] Victim was never identified, and the certified record contains no indication that she was harmed. The Commonwealth proceeded on the aggravated assault charge on the theory that Appellant attempted to cause serious bodily injury.

[2] According to Appellant, the face of the perpetrator was not clear in the video footage, which was not included in the certified record before us. Since Appellant and the trial court did not rely upon the video to support their respective positions, its absence does not hamper our review.

- 2 -

that she had informed police that the man she saw push the victim was five feet and five or six inches tall. Appellant is five feet, ten inches tall. Notwithstanding the discrepancy, the trial court found Appellant guilty of all charges.

On October 25, 2023, the trial court sentenced him as indicated above. Appellant filed a timely post-sentence motion requesting a new trial, contending that the verdict was against the weight of the evidence. The motion was denied by operation of law by order of March 4, 2024, and this timely appeal followed. The court ordered Appellant to file a Pa.R.A.P. 1925(a) statement and he did.[3] Thereafter, the court authored a Rule 1925(a) opinion supporting its refusal to grant Appellant a new trial.

---

[3] Appellant filed a motion for an extension, requesting to file his statement within twenty-one days after the production of the notes of testimony. The record does not reflect that the court ruled upon the motion, and Appellant filed his statement beyond the time allotted by the initial Rule 1925(b) order. Nonetheless, we conclude that the waiver provision of Rule 1925(b)(4)(vii) does not preclude our review. Initially, we observe that the court's order did not include all the information mandated by Rule 1925(b)(3), so the Rule's waiver provision is arguably inapplicable. *See*, *e.g.*, ***Rahn v. Consol. Rail Corp.***, 254 A.3d 738, 746 (Pa.Super. 2021) (holding Rule 1925(b) waiver did not apply where trial court's order did not comply with subsection (b)(3)(iii)'s requirement that it include the addresses at which the appellant can serve the court with the statement by mail and in person). Even if it were, we would find the lateness of the filing to be *per se* ineffective assistance of counsel and would proceed to decide the merits of Appellant's claim of error without a remand since the trial court addressed it in its opinion. ***See*** Pa.R.Crim.P. 1925(c)(3); ***Commonwealth v. Presley***, 193 A.3d 436, 441 (Pa.Super. 2018).

Appellant presents the following question for our consideration: "Did the lower court err and abuse its discretion by denying [Appellant's] post-sentence motion for a new trial, where the verdict was so contrary to the weight of the evidence as to shock one's sense of justice, where the Commonwealth's identification evidence was extremely weak and unreliable?" Appellant's brief at 3.

> The following legal tenets govern our review of Appellant's claim:
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Hence, our task is to determine whether the trial court, in ruling on Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on

partiality, prejudice, bias, or ill-will."[4]   ***Commonwealth v. Clay***, 64 A.3d

1049, 1056 (Pa. 2013) (cleaned up).

Appellant's argument in favor of relief from this Court is, in sum, as

follows:

> The entirety of the evidence in this case is a single identification,
> made by a stranger, over Zoom, and not until a preliminary
> hearing weeks after the incident.  Then, based only on his eyes
> and hair.  There is no evidence [that Appellant's] clothing matched
> the assailant's.  And his physical features were inconsistent with
> the description given at the time of crime.  It simply shocks the
> conscience to uphold this conviction as reliable.  [Appellant] asks
> this Court to find that the verdict was against the weight of the
> evidence and that the trial abused its discretion in denying his
> petition for a new trial.

Appellant's brief at 10 (cleaned up).

The trial court explained its denial of Appellant's weight claim as follows:

> In the present case, [Ms.] Jackson was on duty at work, which
> naturally requires a heightened attention to one's surroundings.
> [Her] testimony supports this.   She testified that she saw
> [Appellant] leaning against the wall among some other
> passengers before approaching Victim and shoving her.  Upon
> seeing the altercation, [Ms.] Jackson immediately began calling
> out to her counterpart on the other side of the subway and running
> to hit the train- stop button.  Her quick reaction and need to alert
> a nearby coworker further suggest she was already attentive to
> her surroundings during the crime.  Before leaving the station,
> [Appellant] crossed over to [Ms.] Jackson's side where she asked
> him why he pushed Victim.  [Appellant] replied "fuck that white
> bitch," further confirming that he was the same man that [she]
> had just seen push Victim.  [Ms.] Jackson's ability to recognize

---

[4] While it may seem peculiar to ask a trial court to rule that its own finding is conscience-shocking, "this Court applies the same standard of review to weight claims regardless of whether the trial judge presided over a jury or non-jury trial." ***Commonwealth v. Peters***, 276 A.3d 226, 2022 WL 704263 at *2 n.2 (Pa. Super. 2022) (non-precedential decision).

[Appellant] after he crossed over to her side of the station and engage him in conversation further demonstrates her attentiveness to the unfolding events. At trial, she identified [Appellant] confidently and without hesitation, and she previously identified him at a preliminary Zoom hearing by his eyes and hair. And of primary importance, [Ms.] Jackson had the opportunity to watch [Appellant] at the time of the crime. [She] saw [Appellant] stand up from the wall, cross over to Victim, and push her onto the tracks. She then got to see him up close as he crossed over to her side of the station to exit.

Jackson was confronted with a statement she gave to police about an hour after the incident in which she described the perpetrator as being 5'5" or 5'6" whereas [Appellant]'s height is 5'10". However, this misestimate of four or five inches does not invalidate the rest of [Ms.] Jackson's otherwise credible testimony. This minor discrepancy could have any number of benign explanations and [Ms.] Jackson did not testify as an expert in estimating height.

Given the totality of the circumstances, the court determined that [Ms.] Jackson's testimony was credible and thus the Commonwealth's identification evidence was reliable.

Trial Court Opinion, 7/12/24, at 2-3 (cleaned up).

We find the trial court's rejection of Appellant's weight claim to be eminently reasonable, and wholly without any indication that it was founded upon legal error, "partiality, prejudice, bias, or ill-will." **Clay**, 64 A.3d at 1056 (cleaned up). Without any reason to disturb the trial court's ruling, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/21/2025