J-A13004-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL WASHINGTON | : | |
| | : | |
| Appellant | : | No. 943 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 26, 2024
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000488-2023

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: JULY 8, 2025**

Michael Washington appeals from the judgment of sentence of twenty-seven to fifty-four months of imprisonment imposed following his nonjury conviction of two counts of aggravated assault. We affirm.

We glean the following from the certified record. On June 10, 2022, Appellant was housed in the Restricted Housing Unit ("RHU") within the Beaver County Jail. Correctional Officer Jeremy Perkins was supervising the RHU during Appellant's allotted one hour to move freely around that unit. As Officer Perkins walked past a stairway, Appellant "came up from behind and struck him in the back of the head." Trial Court Opinion, 10/3/24, at 4. Officer Perkins struggled to subdue Appellant while he called for backup. With the assistance of multiple officers placing Appellant prone on his stomach, Officer Perkins was able to handcuff him. In light of Appellant's violent conduct, Officer Perkins prepared to escort him to another room to be secluded for two

hours.  However, when Appellant stood up, he head-butted the officer on the side of the face.  Officer Perkins sustained minor injuries from these attacks.  Notably, he did not recall Appellant saying anything during the incident, nor did he have any warning that an attack was imminent.

As a result, the Commonwealth charged Appellant with two counts of aggravated assault of an enumerated person.  This matter was consolidated with docket 495 of 2023, which concerned Appellant's prior punching assault of two security guards and a police officer during his involuntary commitment intake at Heritage Valley Beaver, a hospital, on September 29, 2021.

Appellant proceeded to a joint bench trial.  Concerning the instant docket, Officer Perkins attested to the aforementioned facts.  Appellant presented an insanity defense as to all charges.  With regard to  the hospital case, Appellant proffered testimonial and video evidence of a recent community commitment to establish his mental capacity at the time of the attack.  Otherwise, he premised his global defense primarily upon the expert opinion of Carol A. Hughes, M.A., a licensed psychologist.  She testified that Appellant has been diagnosed with schizophrenia, and that "the symptoms can wax and wane.  They can literally vary moment to moment, day to day. . . . Different days can be very different."  N.T. Trial, 4/17/24, at 202.  Further, she explained that simply having such a diagnosis is insufficient for one to be deemed legally insane.  **See** N.T. Trial, 4/18/24, at 35.

Ms. Hughes attempted to conduct a competency evaluation of Appellant in February 2022 and August of 2022.  She testified that Appellant's symptoms

during those two interactions manifested in formal thought disturbances, which prevented her from being able to interview him. While "[t]he distortions in his verbal presentation [were] a little bit different" between the two visits, "it was still indicating the distorted thought process and the disturbance in his verbal presentation." N.T. Trial, 4/17/24, at 186-87. She interpreted this as evidence that his symptoms had persisted in the intervening period, which included the date of the attacks on Officer Perkins. *Id*. at 198-99.

In her subsequent forensic mental health assessment in September of 2023, Ms. Hughes recounted that she reviewed several additional records to render her opinion that Appellant was insane at the time of both the September 2021 and June 2022 assaults. As is relevant to the instant appeal, she noted that the jail disciplinary documentation from the June incident indicated "'that he was shouting incoherent thoughts of being buried in gold and being better with a gun.'"[1] *Id*. at 205 (quoting Defense Exhibit G (Forensic Mental Health Assessment), 9/11/23, at 16). She opined this type of statement was "consistent with thought disorder[,]" she did not "have any data that would indicate to [her] that at that time he was in remission of these symptoms[.]" Therefore, she concluded that, at the time of the June attacks,

_____

[1] Importantly, the court explained that it admitted the reports and permitted Ms. Hughes to testify to the statements therein as it pertained to her reliance on those documents in rendering her opinion, but her "reliance on these alleged facts d[id] not establish those facts as evidence[.]" N.T. Trial, 4/18/24, at 27.

- 3 -

his psychosis was "impacting his ability to recognize that what he was doing was wrong." *Id*. at 205; N.T. 4/18/24, at 16-17.

At the conclusion of the trial, the court found Appellant not guilty by reason of insanity on the hospital companion case. However, it adjudicated him guilty in the case *sub judice*. Critically, the court considered the lack of evidence that Appellant was experiencing symptoms similar to those of the September assault in the moments or days surrounding the June incident, and concluded that his symptoms had waned at that point such that he had not established by a preponderance of the evidence that he was legally insane. *See* N.T. Trial, 4/18/24, at 77-79.

The court then sentenced Appellant as indicated above. Appellant timely filed a post-sentence motion challenging the weight of the evidence supporting the court's finding that Appellant was not insane at the time of the charged conduct. The trial court denied the motion by opinion and order. This timely appeal followed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) statement, indicating that he intended to challenge the weight of the evidence as it pertained to his insanity defense.[2] The court thereafter authored a responsive Rule 1925(a) opinion.

Appellant presents a single question for our consideration: "Whether the trial court abused its discretion in finding Appellant failed to prove by a

---

[2] We remind the trial court that its Rule 1925(b) orders should include "the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(iii).

preponderance of evidence that he was legally insane at the time of the commission of the aggravated assaults at issue in this case?" Appellant's brief at 4. Specifically, Appellant attacks the trial court's decision to deny his motion for a new trial based upon the weight of the evidence. We are guided in our analysis by the following legal principles:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.
>
> To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up).

With this standard of review in mind, we turn to the substance of Appellant's complaint, *i.e.*, his insanity defense. Generally, defendants are presumed sane, and they bear "the burden of proving an insanity defense by a preponderance of the evidence." *Commonwealth v. Fortune*, 302 A.3d

- 5 -

780, 783 (Pa.Super. 2023) (cleaned up). Overcoming this burden is "tantamount to a more likely than not inquiry." ***Commonwealth v. Watson***, 292 A.3d 562, 567 (Pa.Super. 2023) (cleaned up).

Our Crimes Code sets forth the parameters of the insanity defense as follows:

> **(a) General rule.--**The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.
>
> **(b) Definition.--**For purposes of this section, the phrase **"legally insane"** means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S. § 315. We have explained the underpinnings of this bipartite framework thusly:

> The rule sets forth two separate and distinct aspects of the defense in Pennsylvania: a cognitive incapacity prong and a moral incapacity provision. Where the defendant alleges that he did not know what he was doing, he is presenting a cognitive incapacity insanity defense. On the other hand, if the defendant submits that he did not understand that what he was doing was wrong, he is advancing a moral incapacity defense.

***Fortune***, 302 A.3d at 784 (cleaned up).

Here, the trial court explained that it credited Ms. Hughes's testimony that Appellant suffers from schizophrenia, and that the associated psychotic symptoms "wax and wane[.]" Trial Court Opinion, 10/2/24, at 12. It considered this variability in conjunction with Officer Perkins's explanation that

the attacks were unprovoked, Appellant did not display any strange language during the assaults, and there was no other indication that he was then experiencing symptoms consistent with his diagnosis. *Id*. at 12-13, 16. The court acknowledged Ms. Hughes's opinion that Appellant's symptoms were constant between his February and August 2022 forensic interviews; nevertheless, it determined that his symptoms had waned at the time of the June 2022 incidents. *Id*. at 14. The court observed that Ms. Hughes had relied, in part, upon statements attributed to Appellant in connection with the assault. However, it gave these statements no weight because: (1) "it was not made clear whether the statements in the report were made before or during either of the assaults[;]" (2) "these statements were not considered substantive evidence[;]" and (3) "Officer Perkins testified credibly to the contrary[.]" *Id*. at 15-16. Based on the foregoing, the court concluded that "Appellant's convictions were not so contrary to the evidence as to shock its conscience." *Id*. at 17.

Appellant maintains that the court abused its discretion in reaching this conclusion. Specifically, he states that

> in (1) affording significant, if not all, weight to the testimony of the correctional officer, which the trial court misstated in formulating the basis for the guilty verdicts,[3] and (2) completely

---

[3] In announcing its verdict, the court stated that Appellant "was hiding himself behind a staircase[.]" N.T. Trial, 4/18/24, at 77. While Appellant takes issue with this characterization because it was unclear from the officer's testimony where exactly Appellant was before the attack, we note that the court made
*(Footnote Continued Next Page)*

discounting Appellant's expert's opinion that Appellant was suffering from a disease of the mind, schizophrenia with psychosis and formal thought disorder, that resulted in Appellant both not knowing the nature and quality of what he was doing during the assaults, or that the assaults were wrong.

Appellant's brief at 23.

Our review of the record supports the court's decision. The substantive evidence provided by Officer Perkins, who was obviously present during the incident, bore out that Appellant attacked him without provocation and without exhibiting the symptoms of psychosis present at the September 2021 hospital assaults, or his February and August 2022 competency examinations. This testimony is consistent with Ms. Hughes's explanation that his symptoms can wane. Thus, the fact that he exhibited the symptoms in February and August of 2022, did not mean he was necessarily experiencing those symptoms in June. Moreover, the statements referenced in Ms. Hughes's reports were not admitted as substantive evidence, but rather her testimony about those statements was permitted solely for her to explain upon what she based her opinion. The court's decision to assign those statements no weight is further supported by the fact that, even if they were admitted as substantive evidence, they provided no indication of when Appellant made such statements in relation to the attacks.

_____

a reasonable inference that he had so secreted himself given that Officer Perkins testified he was attacked from behind, without warning, as he passed a staircase.

- 8 -

Based on the foregoing, we discern no error in the court's determination that its conscience was not shocked by its conclusion that Appellant did not prove legal insanity by a preponderance of the evidence for the June 2022 assaults, where the record supported its decision to weigh the officer's contemporaneous observations more heavily than the examiner's prospective opinion. Accordingly, since the court did not err in denying Appellant's post-sentence motion challenging the weight of the evidence, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>07/08/2025</u>