J-S10011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH ONYANGO | : | |
| | : | |
| Appellant | : | No. 1512 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 17, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002735-2021

BEFORE: BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:           **FILED: APRIL 11, 2025**

Joseph Onyango appeals from the aggregate sentence of six to fifteen years in prison arising from his convictions for rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, and aggravated indecent assault. Before this Court, Spencer H.C. Bradley, Esquire, has petitioned to withdraw as Appellant's counsel and filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). We grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The victim in this matter is M.J.S. ("Victim"), a retired social worker. At the time of the events in question, Victim suffered from various physical ailments limiting her mobility, including chronic obstructive pulmonary disease and neuropathy. She lived in an apartment and required use of a walker or wheelchair to get around even short distances therein. Victim also needed

home health aides to assist her approximately twenty-one hours a day with matters such as purchasing groceries, cooking, cleaning, toileting, bathing, and dressing.

On April 28, 2021, Appellant, who had just begun a new position as a home healthcare employee, began assisting Victim in her residence. Victim reported that the first few days she worked with Appellant, they got along well and there were no issues. However, on May 4, Victim requested Appellant's assistance with cleaning her in the shower, and Appellant agreed. While Victim was washing herself, she felt Appellant's erect penis press into her backside. Victim did not confront Appellant about this because he had previously disclosed that he had diabetes, and she decided to give him the benefit of the doubt that his erection was potentially medically induced. Appellant completed that shift without any further incidents.

Appellant returned for work at the Victim's apartment on the following day. At one point while Victim was seated on a recliner, Appellant began rubbing her legs. He then started penetrating her vagina with his fingers while she told him several times to stop. Instead, Appellant stood up on the recliner above Victim, forcing his penis into her mouth while wearing a condom. She attempted to resist him but was too weak to push him off due to her physical limitations. Appellant then took her to the bed and pulled down her underwear, vaginally raping her. She again was unable to stop Appellant. He ceased the sexually assaultive conduct shortly before his shift was scheduled to end and left Victim in bed with her underwear around her ankles. She

remained in bed crying through the night. She did not contact law enforcement.

When another home healthcare aide from a different agency arrived in the early morning hours of May 6 for a brief visit, Victim told her what had happened. The employee informed Victim that she did not have time to deal with the situation, covered Victim up with a blanket, and left to perform other tasks within the apartment before leaving. Appellant returned to the apartment at 2:00 p.m. that afternoon. Not long after, he again forced Victim to perform oral sex on him while he wore a condom and while she was confined to her recliner. To get Appellant to leave, Victim gave him twenty dollars to go to a store and purchase alcohol. While Appellant was out, she called her neighbor, a social services organization, and ultimately, the police. She then began to experience significant difficulty breathing.

Several officers arrived and contacted an ambulance upon observing Victim's condition. Appellant returned to the apartment and was questioned by police. He indicated to officers that his name was "Edwin," refusing to provide a last name or birthdate. A representative from his employer came to the scene and spoke with the officers, providing identification on Appellant's behalf, which was a New Jersey license listing his last name as "Obunkango" and containing a picture of an individual other than Appellant. Police collected evidence within the residence, including one used condom near the recliner. They also requested that Appellant go to the station to provide an interview, to which he agreed. Prior to permitting him in the fingerprinting area of the

station, the officers patted him down for officer safety and found condoms in his pocket. Appellant gave a statement to officers wherein he acknowledged having vaginal and oral sex with Victim, but he classified it as consensual.

In the interim, Victim was transported to the hospital, where she remained for five days. Nurses performed a sexual assault examination and located a semen profile on her vagina that matched Appellant's DNA. Appellant was ultimately arrested and charged with the offenses indicated hereinabove.

The matter proceeded to a jury trial, and multiple witnesses attested as to these events. Appellant testified in his defense, proclaiming that he and Victim had vaginal and oral sex one time each and that the encounters were mutual and voluntary. He expressed that Victim had initiated by kissing him and had at one point shown him sex toys that she kept in her bedroom. Appellant believed that based on a prior conversation, she had agreed to be his girlfriend.

At the trial's conclusion, the jury found Appellant guilty of all offenses. Appellant was sentenced to a concurrent six to fifteen years in prison on the rape and IDSI counts. The trial court concluded that sexual assault merged with rape and imposed no further penalty on the aggravated indecent assault and false identification convictions.

With the aid of counsel, Appellant filed a timely appeal, but later was given leave to discontinue it. He then petitioned the court pursuant to the Post Conviction Relief Act ("PCRA"), requesting reinstatement of his post-

sentence and appellate rights, which the PCRA court granted. Appellant thereafter filed a counseled post-sentence motion, challenging solely the conviction for false identification to law enforcement on the basis that officers never informed Appellant that he was under investigation at the time he gave a different name. The court granted the motion and vacated that conviction. Appellant nonetheless filed a timely appeal. The trial court ordered Appellant to file a statement pursuant to Pa.R.A.P. 1925.[1] Counsel complied, submitting a Rule 1925(c)(4) statement expressing his intent to withdraw. The court in response entered a memorandum statement in lieu of opinion.

As noted, counsel has filed in this Court an *Anders* brief and motion to withdraw. The following legal principles apply to our consideration of those filings:

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof. . . .
>
> *Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

---

[1] We remind the trial court that it must include in every Rule 1925(b) order, *inter alia*, indication of the following: (1) the place the appellant can serve the statement on the judge in person, (2) the address to which the appellant can mail the statement, and (3) that the appellant's failure to include an issue in the statement **shall** result in waiver. *See* Pa.R.A.P. 1925(b)(3)(emphasis added).

- 5 -

If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on [a]ppellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous.

**Commonwealth v. Wrecks**, 931 A.2d 717, 720-21 (Pa.Super. 2007) (citations omitted).

Our Supreme Court has further detailed counsel's duties as follows:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and **Anders** brief, we conclude that counsel has complied with the requirements set forth above. He provided an appropriate summary of the facts and procedural history. **See Anders** brief at 6-15. Further, counsel supplied the brief to Appellant and advised him of his right to hire new counsel or proceed *pro se* in this Court. The brief states that the appeal is frivolous and presents its reasons.

Hence, we proceed to "'make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" **Commonwealth v. Flowers**,

113 A.3d 1246, 1249 (Pa.Super. 2015) (quoting **Santiago**, 978 A.2d at 354 n.5). However, we note that "when an appellant, either acting *pro se* or through private counsel, files a response to the **Anders** brief, our independent review is limited to those issues raised in the **Anders** brief. We then review the subsequent *pro se* or counseled filing as we do any advocate's brief." **Commonwealth v. Bennett**, 124 A.3d 327, 333 (Pa.Super. 2015) (cleaned up). Appellant in this case did submit a *pro se* response, which we discuss in greater detail below. We therefore limit our review to the **Anders** brief and the *pro se* filing.

Counsel identifies four types of issues that would arguably support an appeal before concluding that they are all frivolous. The first is whether the convictions were supported by sufficient evidence. **See Anders** brief at 21-30. The second concerns whether the convictions were against the weight of the evidence. **Id**. at 31-32. Finally, counsel addresses in tandem the legality and discretionary aspects of the sentence imposed by the trial court. **Id**. at 32-38. We consider each contention in turn.

We begin with our well-settled standard of review for challenges against the adequacy of evidence:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.

> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Roberts*, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up).

As noted, Appellant's convictions were for rape, IDSI, sexual assault, and aggravated indecent assault. A person commits rape when he "engages in sexual intercourse with a complainant" by forcible compulsion. *See* 18 Pa.C.S. § 3121(a)(1). The Crimes Code delineates forcible compulsion as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S. § 3101. In a similar vein, one is guilty of IDSI if he "engages in deviate sexual intercourse with a complainant" by forcible compulsion. *See* 18 Pa.C.S. § 3123(a)(1). "Deviate sexual intercourse" is relevantly defined as "[s]exual intercourse per os or per anus between human beings[.]" 18 Pa.C.S. § 3101.

As to sexual assault, except when it constitutes rape or IDSI, "a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. Finally, a person will be found guilty of aggravated indecent assault if he, without consent, "engages in penetration, however slight, of the genitals or anus of a complainant with a

part of [his] body for any purpose other than good faith medical, hygienic[,] or law enforcement procedures". 18 Pa.C.S. § 3125(a)(1).

Within the **Anders** brief, Attorney Bradley exhaustively analyzes the sufficiency of the evidence supporting the convictions, recounting with citation to the record the evidence establishing the elements of each crime. **See Anders** brief at 21-30. Specifically, counsel notes that pursuant to Victim's testimony, as largely corroborated by Appellant's interview with police, sexual intercourse, digital penetration, and oral sex occurred between Appellant and Victim. The only contested issue was consent, and counsel states that the jury was free to believe Victim over Appellant. **Id**. at 23-24. The brief also discusses how the forcible compulsion elements of rape and IDSI were met because of Victim's serious health ailments, inability to flee her residence during the incidents, and the position of trust she necessarily had to place in Appellant as a caretaker. **Id**. at 29.

Upon review, we agree with counsel that such a challenge to Appellant's convictions is frivolous. Succinctly, Victim's testimony established that, against her will, Appellant forced her to perform oral sex twice, and vaginally raped and penetrated her with his fingers once. Viewed in the light most favorable to the Commonwealth, the jury was free to conclude that the elements of each crime were met through these acts. Namely, the vaginal intercourse constituted rape, the two occasions of oral sex satisfied the elements of IDSI and sexual assault, respectively, and the digital penetration

was sufficient to establish aggravated indecent assault. As Attorney Bradley correctly notes, there was also sufficient evidence for the jurors to ascertain forcible compulsion based on the disparity in the physical condition and position of power between Victim and Appellant. *See*, *e.g.*, *Commonwealth v. Gonzalez*, 109 A.3d 711 (Pa.Super. 2015) (holding that the forcible compulsion element was met when the defendant had "domination" over a rape victim who suffered from a physical disability, limiting her ability to get off her back, reach her phone, or escape).

Next, the *Anders* brief examines a potential claim that the verdicts were against the weight of the evidence. In so doing, counsel concludes that this contention could not succeed on appeal because it was not preserved in a post-trial motion. *See Anders* brief at 31. We agree.

The Rules of Criminal Procedure provide as follows:

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607. "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Id*., cmt; *see also Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa.Super. 2020) ("An appellant's failure to avail himself of any of the

- 10 -

prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." (citation omitted)).

Our examination of the record confirms that Appellant did not move for a new trial or otherwise raise a weight claim with the trial court at any point, and thus he did not comply with Rule 607. Accordingly, any assertion on appeal that the evidence was against the weight of the evidence must necessarily fail.

Lastly, Attorney Bradley considers together both the legality and discretionary aspects of Appellant's sentence. *See Anders* brief at 32-38. He contends that the concurrent sentences of six to fifteen years in prison each for the rape and IDSI convictions were legal because they fell below the maximum penalty provided for felonies of the first degree, and that sexual assault properly merged with rape. *Id*. at 32. He reiterates that no further penalty was imposed for aggravated indecent assault, but that even if there was, merger was not warranted since it arose from different facts from the rape and IDSI, based upon the testimony of Victim and the multiple distinct sexual assaults occurring over the course of two days. *Id*. at 32-33. Counsel finally concludes that Appellant is unable to contest the discretionary aspects of his sentence on appeal as he never preserved that right. *Id*. at 34.

We again concur with counsel that the legality claims would be completely devoid of merit. Appellant's maximum sentences for rape and IDSI, both of which are first-degree felonies, are well below the statutory

maximum of twenty years. *See* 18 Pa.C.S. § 1103(1) ("In the case of a felony of the first degree, for a term which shall be fixed by the court at not more than [twenty] years."). We also determine that the aggravated indecent assault count did not merge with any other offense since the testimony supported that it was premised upon facts independent of those underlying the rape and IDSI convictions, namely the digital penetration of Victim's vagina. *See* 42 Pa.C.S. § 9765 (providing, among other things, that "[n]o crimes shall merge for sentencing purposes unless the crimes **arise from a single criminal act**" (emphasis added)). Finally, Appellant waived the ability to challenge the discretionary aspects of his sentence by neglecting to lodge an objection at sentencing or via a post-trial motion raising that issue. *See*, *e.g.*, *Commonwealth v. Williamson*, 330 A.3d 407, 420 (Pa.Super. 2025) (noting that before this Court addresses a discretionary challenge, the appellant must establish that the issue was preserved). The post-sentence motion filed in this case spoke only to the sufficiency of Appellant's conviction for false identification to law enforcement.

In sum, we agree with counsel that all the issues identified in the *Anders* brief are frivolous. However, that does not end our inquiry. As noted above, Appellant submitted to this Court a *pro se* response to the *Anders* brief. Therein, Appellant devotes the majority of his writing to recounting the testimony he provided at trial, attempting to discredit Victim and bolster his defense that any sexual contact was consensual. For example, he asserts his

belief that Victim had been sexually assaulted as a child, which provided her an impetus to lie at trial, and that he was shocked that she would be dishonest on the stand. *See* Response to *Anders* brief at 8, 10. To the extent Appellant seeks to raise a claim that the verdicts were against the weight of the evidence, he cannot succeed since, as we already concluded, he did not present this issue to the trial court.

Additionally, Appellant vaguely asserts that his employer and the District Attorney's office generally deprived him of his constitutional rights based on the fact that he had newly arrived in the United States from Kenya and was unfamiliar with American law and custom. *Id*. at 14. He does not however specify what rights were violated other than a bald assertion that those entities "set [him] up in the sex scam." *Id*. He provides no citation to pertinent case law. Therefore, this contention is waived for lack of development. *See*, *e.g.*, *Commonwealth v. Arias*, 286 A.3d 341, 349 (Pa.Super. 2022) ("Appellant's failure to develop these claims with argument, applicable authority, and pertinent analysis results in the waiver of his claims.").

Appellant lastly appears to raise certain allegations of ineffective assistance of counsel. For instance, he claims that his attorney: (1) refused to introduce into evidence the sex toys Victim purportedly showed him, (2) induced Appellant to waive his preliminary hearing, and (3) did not visit him

adequately before trial to develop a defense. *See* Response to *Anders* brief at 2, 3, 14.

This Court has summarized the appropriateness of reviewing such ineffective assistance allegations on direct appeal as follows:

> Generally, a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal. *See Commonwealth v. Holmes*, 79 A.3d 562, 577-80 (2013). Instead, such claims are to be deferred to PCRA review. However, our Supreme Court has recognized three exceptions to the general rule. In *Holmes*, the Court held that a trial court has discretion to address ineffectiveness claims on direct review in cases where (1) there are extraordinary circumstances in which trial counsel's ineffectiveness is apparent from the record and "meritorious to the extent that immediate consideration best serves the interests of justice;" or (2) "there is good cause shown," and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence. More recently, our Supreme Court adopted a third exception, which requires trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review.

*Commonwealth v. James*, 297 A.3d 755, 760-61 (Pa.Super. 2023) (cleaned up).

Our review of the record confirms that Appellant has not expressly waived his ability to seek subsequent PCRA review, nor has he asserted anywhere that he is statutorily precluded from PCRA relief. Likewise, he does not articulate any extraordinary circumstances compelling us to find that counsel's ineffectiveness is apparent from the record. As Appellant has not satisfied the above exceptions, these claims are deferred to collateral review. *See Holmes*, 79 A.3d at 563 ("[W]e hold that [the] general rule of deferral

to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel[.]").

Based on the foregoing, we agree with Attorney Bradley that the instant appeal is wholly frivolous and, accordingly, grant counsel's application to withdraw and affirm Appellant's judgment of sentence.

Application of Spencer H.C. Bradley, Esquire, to withdraw as counsel is granted. Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/11/2025