J-S41002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMI H. ABOULAH | : | |
| | : | |
| Appellant | : | No. 97 EDA 2025 |

Appeal from the Judgment of Sentence Entered September 27, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0002632-2023

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 11, 2025**

Rami H. Aboulah appeals from the judgment of sentence of imprisonment of life plus twenty years imposed after a jury convicted him of first-degree murder, attempted murder, and aggravated assault.  We affirm.

We glean the following factual background from the certified record. Appellant and Patricia White had been divorced for more than three years but continued to live together with their four minor children.  Despite the divorce, Appellant did not view Ms. White as being free to move on with her life.

To that end, he went to her workplace and engaged in screaming matches with her, on one occasion drawing a handgun after assaulting a man with whom she had been speaking.  *See* N.T. Trial, 5/29/24, at 77.  He

_____

[*] Retired Senior Judge assigned to the Superior Court.

enlisted a teenage neighbor, upon threat to kill the child's mother, to advise him about whom Ms. White met. *Id*. at 201-02. He also told the child's mother that he wanted Ms. White back, threatening to shoot both women and let the government raise his children. *Id*. at 205, 217. The neighbors further described a time when Appellant had to be pulled from Ms. White during an attack upon her in the home, and an instance when he injured her hand upon learning that she had a second phone. *Id*. at 204-05, 216.

Starting in April 2023, Appellant began monitoring Ms. White's whereabouts with a GPS device he had secreted in the wheel well of her car. *Id*. at 197. On June 11, 2023, Ms. White sent a WhatsApp message informing Appellant that he was suffocating her and that he had one week to get out of her home and her life and never speak to her again. *See* N.T. Trial, 5/30/24, at 231. That same day, Appellant tracked her location to West Catasauqua Park and photographed her there.

Two days later, Appellant again tracked her vehicle to the same park. He left his three pre-teen children home alone and drove to that location. He stopped in the middle of the adjacent roadway, blocking traffic, to take a photo of a vehicle belonging to Frank Russo parked next to Ms. White's car. Appellant immediately messaged her saying "you are with him." *Id*. at 170-71, 232. Directly thereafter, Appellant pulled into the park and stopped his car perpendicular to those of Ms. White and Mr. Russo to block them from driving away. As Appellant approached Mr. Russo's vehicle, Ms. White got

out of his car and told him to leave so there would not be any problems. An eyewitness at the basketball court in the park recounted what happened as Mr. Russo attempted to leave the scene:

> I seen a gentleman with his gun drawn shooting at a dark-colored car as the car was like speeding up the hill trying to escape. I seen him shoot at the car.
>
> And then as soon as he was done, he turned around and he -- he started shooting at a lady as she was trying to run away. And he shot her in the back, and once she fell face forward, he stood on top of her and he shot her in the back, back of the head.

*Id*. at 80. Mr. Russo was hit four times and gravely wounded, but he encountered an ambulance parked a mere block away and he survived thanks to the timely medical intervention. Ms. White, who received seven bullet wounds in total, did not.

Appellant drove home, called 911, and admitted to the crime. When police came to arrest him, he displayed no anger, regret, or any emotion. He coldly stated, shrugging his shoulders, that he had been tolerating the situation for years and "this is what happens when you cheat[; a] woman don't cheat a man." *Id*. at 192

The Commonwealth charged Appellant with the offenses indicated above. He proceeded to a jury trial at which the prosecution established the aforementioned facts through multiple witnesses, audio recordings, video footage, and evidence extracted from Appellant's phone. The defense did not contest the fact that Appellant shot the two victims, but maintained that he did so in the heat of passion.

In particular, Appellant testified that when he saw that Ms. White was at the park through the tracking device phone application, he went there to ask her what groceries she needed him to get from Walmart. He used the camera on his phone to zoom in on the car he saw in the lot to make sure that it was hers. Appellant then drove over to where her vehicle was situated next to another car, got out, looked into the window, and saw Ms. White with her breasts exposed engaging in sex acts with a man he had never seen before.[1] In his fury, he felt as if someone else took control of his body. All Appellant remembered afterwards was that he retrieved the gun that he always carried in his car and started shooting. *Id*. at 268-74.

Given this evidence, the trial court charged the jury as to both murder and voluntary manslaughter. Regarding the latter, the court instructed as follows:

> Voluntary manslaughter is a killing without malice. To find the defendant guilty of this offense, you must find that the following four elements have been proven beyond a reasonable doubt.
>
> One, that Patricia White is dead. Second, that she was killed by the defendant. Third, that the defendant had the intent to kill her. And, fourth, that the defendant was acting under a sudden and intense passion resulting from serious provocation by Patricia White.

_____

[1] Of note, Mr. Russo, who was married, denied having sexual contact with Ms. White on that or any other occasion, maintaining that they were just talking. On cross-examination, Appellant impeached this testimony with the facts that Mr. Russo initially lied to police about how he was shot, having claimed that he was hit while driving by, and that he and Ms. White had exchanged sexual messages and photos on the day of the murder.

A person acts under a sudden and intense passion if he acts under an emotion such as anger, rage, [or] sudden resentment that . . . renders him incapable of cool reflection.

Provocation occurs when a reasonable man confronted with this series of events would become impassioned to the extent that his mind was incapable of cool reflection and he did not have sufficient cooling-off time between the provocation and the killing.

I have to say, so that you understand this, the provocation here that is alleged is that Ms. White was performing oral sex on Mr. Russo. That's what the defense argues to you is the serious provocation.

. . . .

The distinction between murder and manslaughter is that malice is an element of murder but not manslaughter. A killing is without malice if the perpetrator acts under circumstances that reduce the killing to voluntary manslaughter.

If you find the Commonwealth has proven those elements beyond a reasonable doubt, you should find the defendant guilty. Otherwise, you should find him not guilty of that.

N.T. Trial, 5/31/24, at 70-71.

Ultimately, the jury concluded that Appellant was guilty of murder in the first degree in addition to the other crimes mentioned above. After securing a presentence investigation report, the trial court sentenced Appellant to life imprisonment without the possibility of parole on the murder conviction and a consecutive term of twenty to forty years of confinement for the attempted murder of Mr. Russo.[2]

---

[2] The aggravated assault convictions merged with the attempted murder conviction for sentencing purposes.

Appellant timely filed post-sentence motions alternatively seeking a new trial because the verdict was against the weight of the evidence or modification of his sentence. The court denied the motions following a hearing, after which Appellant timely appealed. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, he complied, and the court authored a Rule 1925(a) opinion. Appellant presents the following question for our consideration:

> Was the guilty verdict of murder in the first degree for the killing of Patricia White . . . against the weight of the evidence and [did it] shock the conscience in that the jury evidently unreasonably believed the trial testimony of Frank Russo that he was not engaged in sexual acts with Ms. White where the Appellant confronted them at the scene of the incident, an essential element of establishing the "heat of passion" which is necessary to permit the verdict of voluntary manslaughter to be entered in the case of an intentional killing, and where Mr. Russo's testimony was incredibly evasive, contradictory, patently false, and in direct opposition to the evidence obtained from Mr. Russo's cell phone?

Appellant's brief at 4.

> The following principles guide our review:
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Arias***, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up).
Thus, our task is to determine whether the trial court, in ruling on Appellant's
weight challenge, "abused its discretion by reaching a manifestly
unreasonable judgment, misapplying the law, or basing its decision on
partiality, prejudice, bias, or ill-will." ***Commonwealth v. Clay***, 64 A.3d 1049,
1056 (Pa. 2013) (cleaned up).

In essence, Appellant's position is that his own testimony about what he
encountered in West Catasauqua Park is of such greater weight than Mr.
Russo's incredible version of events that the jury's failure to find that Appellant
acted under a sudden and intense passion was shocking. He argues:

> In this instance, the sole evidence that [Appellant] was not
> presented with a provocation that was sufficient to cause him to
> become enflamed and unable to control his passion was the
> testimony of Mr. Russo which, with respect to the most important
> aspect of the facts of the case, whether or not he was engaged in
> oral sex at the time of the incident, is patently untrustworthy.
> Likewise, the remaining requirements of a finding that the act of
> killing Ms. White constituted voluntary manslaughter, *viz*., passion
> driving the actor to lose his ability to reason (he was
> "electrocuted" and controlled "like a Playsta[t]ion") without time
> to cool off, were met by [Appellant]. The evidence presented for
> a verdict of voluntary manslaughter was overwhelming.

Appellant's brief at 26 (cleaned up).

In rejecting Appellant's claim, the trial court highlighted the evidence
suggesting that his actions on the day in question were the product of
deliberation rather than passionate impulse. It noted that Appellant's
representation that his relationship with Ms. White was intact was contradicted
by other witnesses, and that he had known for two days that he was going to

have to leave their home. Further, when he tracked her to the park and drove there with a loaded gun and an extra magazine, he did not immediately confront her, but surveyed the scene before, upon cool reflection, executing a calculated murder. *See* Trial Court Opinion, 5/12/25, at 7-8. The court opined that Mr. Russo's unwillingness to admit that he was involved in an extra-marital affair had no impact on the outcome of the trial, and that the jury resoundingly rejected Appellant's contentions that he acted in the heat of passion when he, after shooting Mr. Russo four times as he fled the scene, hit Ms. White with seven shots, including one in the back of her head as she lay helpless on the ground. *Id*. at 9.

We find the trial court's denial of Appellant's weight claim to be reasonable and lacking any indication that it was founded upon legal error, "partiality, prejudice, bias, or ill-will." *Clay*, 64 A.3d at 1056 (cleaned up). Appellant is operating under the misguided impression that the jury could not disbelieve both Mr. Russo's testimony about what Appellant found him and Ms. White doing in the car, and Appellant's testimony that he was acting in the heat of passion when he shot her. Given Appellant's history of jealous violence when finding Ms. White merely speaking to another man, and her indication two days prior that she was done with Appellant, the jury was well within its rights to conclude that he went to that park intending to kill his ex-wife if he found her engaging in what he viewed as cheating, or that he calmly and coolly formed the intent to kill her when he saw her with Mr. Russo. His

arguments to the contrary hinge upon the veracity of his self-serving testimony that he left his children home alone to go ask Ms. White for a grocery list, only to be provoked into hitherto unintended violence. The jury was free to reject Appellant's story wholesale, along with any portions of Mr. Russo's it deemed implausible, and find that Appellant shot Ms. White with a malicious intent to kill. *See*, *e.g.*, ***Commonwealth v. Marberger***, 344 A.3d 403, 411 (Pa.Super. 2025) ("[T]he trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." (cleaned up)). The trial court's decision to deny Appellant a new trial based upon the weight of the evidence was not an abuse of discretion.

Lacking cause to disturb the trial court's ruling, we thus affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/11/2025